## THE STATE *VS.* DUNCAN.

1. Where a statute introduces a new offence, and prescribes its constituents, without reference to any thing else,—an indictment founded upon it will be sufficient, if it describe the offence in the terms of the act.

2. The words "charged with a capital offence," in the statute, (Aik. Dig. 124, sec. 63,) must be understood to mean a *charge made in legal form.*

Error to the Circuit court of Pike county.

Indictment for concealing a slave, charged with capital offence—tried by *Crenshaw,* J.

The defendant was indicted in the Circuit court of Pike, in two several counts.   The first charged him with concealing "Ned, a slave, the property of him the said Isaac Duncan, so that he cannot be brought to condign punishment—the said Ned being then charged with a capital crime, to wit, with the crime of having committed an assault and battery with intent to kill, on the person of Archibald J. More, a white person, contrary to the form of the statute," &c.

The second count is in the same form, save only it charges the *carrying away of* "*Ned,*" &c. instead of concealing him, &c.   To both of these counts, the defendant pleaded "not guilty," and was put on his trial.

There being no proof offered to show that legal proceedings had been instituted against *Ned,* for the capital crime supposed to have been committed by him, the defendant moved the court to charge the jury, that a mere

verbal charge of Ned's guilt, though he were so in fact, would not be sufficient, " without showing that proceedings of a legal nature had been instituted ;" which charge the court refused to give, but charged the jury, that if they believed that the slave was guilty of a capital offence, and that defendant, knowing his guilt, did run him off, or conceal him, so as to prevent him from being brought to condign punishment, it was sufficient, although no proceedings of a legal nature had been instituted against him.

Whereupon the jury having returned a verdict of guilty, the defendant moved the court in arrest of judgment:

1. Because the indictment does not charge an indictable offence ;

2. Because the indictment does not set out that any proceedings of a legal nature were instituted against the slave, whom the defendant is charged with having concealed.

Which motion was overruled by the Circuit court, who thereupon referred to this court, the questions of law thereon arising, as well as those presented by the charge given to the jury.

*Attorney General,* for the State.

COLLIER, C. J.—The section of the statute on which this indictment is founded, is as follows :

" If the owner, or any other person having charge or government of any slave, who shall be charged with any capital crime, shall conceal or carry away any such slave, so that he or she cannot be brought to condign

punishment, every owner or other person so offending, shall forfeit the sum of five hundred dollars."

Where a statute is introductive of a new offence, and prescribes its constituents without reference to any thing else—in an indictment founded upon it, it is sufficient to describe the offence in the terms of the act—(State vs. Brown, 4 Porter's R. 410.) In the case before us, the statute provides for the punishment of the *concealing or carrying away of a slave, charged with any capital crime,* and if it does not introduce a new offence, at least makes an old one punishable under a new state of facts. Perhaps, at common law, it was indictable, to enable one against whom legal process had issued, for the commission of some crime, to elude an arrest; on the ground, that the party thus aiding an escape, had been instrumental in opposing the due course of law. So, to give aid and comfort to one who has actually committed a capital crime, subjects an individual thus acting, to punishment as an accessary, after the fact. But, in the present instance, the act does not propose to punish the offence of "obstructing legal process," as known to the common law : it is necessary, in order to a conviction, that it should be shown not only that the action of the law had been thwarted, but it should also appear that the *slave* concealed or carried away, could not be brought to "condign punishment." And though the party might be guilty of the offence of *obstructing process,* yet, if the slave were to return and be tried, or be in legal custody, no indictment could be maintained upon the statute.

Nor does the act, cover the case of an accessary, after the fact. In order to convict one charged in that charac-

ter, it is indispensable to show that the principal has been tried. The indictment, then, is founded upon the statute, and, conforming with precision to its terms, is free from all legal exception.

We think the language of the section under examina= tion, is so explicit, especially when considered in connec= tion with the section of the act immediately preceding, and every statute which contains the word "charged," in connection with crime, as to leave no doubt, that in order to the consummation of the defendant's guilt, it should have been shown that legal proceedings had been instituted before the slave was concealed or carried away by him. The preceding section requires that the owner of any slave charged with a capital offence, shall employ counsel. Now, as no counsel could be needed, until some step provided by the law had been taken, with a view to the punishment of the accused, the words, "charged with a capital offence, must mean a *charge made in legal form*—(Aik. Dig. s. 62, p. 124; see also s. 50, p. 122; s. 37, p. 121; s. 15, p. 117; sec. 13 and 14, p. 116, in which the term "*charged*" is used in the same sense.)

In adjusting the meaning of the section on which the indictment is founded, it may be remarked, that it must not be extended by construction, so as to embrace a state of facts not authorised by the language employed; for the act itself is highly penal, and we must look rather to its letter, than the intention of its framers. That the word "charged," is one of indeterminate meaning, in common porlance, must be granted, yet we have shown that it is sufficiently defined, whenever used by the le-

gislature in any enactment similar to that we are considering; and being always used to indicate *a charge made as the law provides,* we must consider its legal meaning to have been determined.

In Benton vs. Benton, (1 Day's Cases, 111,) it was held, that where a word or phrase of indeterminate meaning is used in a statute, its true import must be collected from its application to the subject matter, as explained and used by elementary and other law writers; and in Livermore, assignee, &c. vs. Bayley, (3 Mass. R. 487,) it was said, that in construing a statute, the proper sense of a term, in opposition to the technical, is not to be adopted when manifest inconvenience would result—(See also 7 Mass. R. 323.)

It is needless to consider so much of the charge of the Circuit judge, as imposed upon the *State* the necessity of proving the slave's guilt of the capital crime, of which he is said in the indictment to have been charged. If the court required more to be shown by the State, than the law made necessary, the defendant was not prejudiced, and as it could not possibly affect the judgment of the Circuit court, it is not important to enquire whether in a proceeding like the present, the *guilt of the slave* enters into and forms an essential ingredient of the offence. We will, then, as this question was not argued, leave it to be decided when it shall hereafter arise.

For the defect of proof in the particular stated, the judgment must be reversed, and the case remanded, that the defendant may be tried *de novo,* or such proceedings had in the premises, as may be considered by the Circuit court to be proper.