# Sparrenberger v. The State.

## *Indictment for Keeping Open Shop on Sabbath.*

1. *Statutory offense; indictment for; how far should pursue the statute.*—Although it is safer, it is not requisite that an indictment for a statutory offense should pursue the exact language of the statute; other words may be employed, but no word which is narrower than that used in the statute, or which has not its full signification, will suffice.

2. *"Shop"; what word not equivalent of.*—The word *"shop"* is not the legal equivalent of the word *"store,"* as used in section 3614 of the Revised Code, which makes it a penal offense to keep *open store* on Sunday.

3. *Indictment; what not matter of plea in abatement.*—It is not matter of a plea in abatement to the indictment that it was found without evidence of witnesses, or without legal documentary evidence, or returned into court without the concurrence of twelve grand jurors.

4. *Same.*—Such objections, however, are available by timely motion to quash, or to strike the paper from the files; which the court should always grant, if satisfied by the evidence, beyond a reasonable doubt, that the grounds of the motion are true, and that there has been no lack of diligence in ascertaining the facts, and bringing them to the attention of the court.

5. *Indictment; what not legal documentary evidence to authorize finding of.*—A former finding by a grand jury which has been quashed, or on which a *nolle pros.* has been entered, is not such "legal documentary evidence" as will authorize the finding of a true bill; but where witnesses or legal documentary evidence were before the grand jury, no inquiry as to its sufficiency is permissible on such a motion.

APPEAL from City Court of Montgomery.

Tried before Hon. JOHN A. MINNIS.

The count of the indictment upon which the trial was had charged that the appellant, Sparrenberger, "being a merchant or shop-keeper, and not a druggist, did keep open shop on Sunday," against the peace, &c. A demurrer to the count, on the ground that it did not charge the offense of keeping " open store," was overruled.

The defendant then filed five pleas in abatement. The first plea averred, in substance, that the indictment, which was

31

[Sparrenberger v. The State.]

found at the present term, was found without any witnesses being examined before the grand jury. The second and third pleas aver that the indictment was found without the concurrence of twelve grand jurors. The fourth plea states that the indictment was found against defendant "on an indictment which had been found against him at a former term, and by a different grand jury, for the offense of keeping open store," which indictment was quashed at a former term, and that the present indictment was found upon this and no other evidence. The fifth plea avers that the indictment was found without any evidence before the grand jury, and without any knowledge on the part of any of the grand jury of the commission of the offense by defendant.

A demurrer was put in on behalf of the State to each of said pleas, and sustained by the court. The defendant thereupon went to trial on plea of not guilty, and was convicted and fined ten dollars.

ELMORE and MURPHEY, for appellant.—The word "shop" does not convey the idea meant by the statute when it uses the word "*store.*" It may or may not be an offense to keep open shop on Sunday—depending on the kind of shop. The pleas in abatement contained facts demonstrating that the indictment had no legal existence.

F. S. FERGUSON, *contra.*—The indictment follows the words of the statute, except that the word "shop" is substituted for "store"; but the two words are synonymous, as used in the statute. 12 Ala. 732 ; 13 Ala. 413; 22 Ala. 9. The demurrers to the pleas in abatement were properly sustained. In the first place, they contradicted the record. 4 Denio, 133 ; *Tuck* v. *State,* 7 Ohio, 595 ; *Ward* v. *State,* 48 Ind. 289. They also presented issues which could be proved only by the testimony of grand jurors themselves, which public policy forbids. § 4007 R. C.; *State* v. *Gibbs,* 39 Iowa, 318; 2 Gallison, 364.

BRICKELL, C. J.—It is a well established rule of criminal pleading, that if an offense is purely statutory, the indictment must pursue the words of the statute, so as to bring the defendant precisely within it. There is much conflict of authority as to the precision which must be observed in following the language of the statute. Some authorities require that the exact words of the statute must be employed. Others regard the rule as satisfied if words substantially the same, or equivalent—of the same legal import with the

[Sparrenberger v. The State.]

words of the statute—are used. This is the rule which has prevailed in this court from an early day. *State* v. *Brown*, 4 Port. 410; *State* v. *Stedman*, 7 Port. 495; *State* v. *Duncan*, 9 Port. 260; *Turnipseed* v. *State*, 6 Ala. 664; *Worrell* v. *State*, 12 Ala. 732; *State* v. *Bullock*, 13 Ala. 413; *Skains & Lewis* v. *State*, 21 Ala. 218. If the words employed in the indictment as descriptive of the offense have not the full signification of the words of the statute—if they are narrower in meaning—they cannot be deemed sufficient. An examination of the indictment would not authorize the court to declare the offense had been committed, nor would it inform the defendant of the precise nature of the accusation.

The indictment was intended to be founded on the clause of the statute to punish Sabbath-breaking (R. C. § 3614), which is in these words: "or who, being a merchant or shop-keeper (druggist excepted), *keeps open store* on that day." The sufficiency of the second count alone is presented for consideration, a demurrer to the first count having been sustained by the city court. The count preserves the words of the statute, except that it substitutes the word *shop* for the word *store*, alleging, not that the defendant did keep *open store*, but that he did keep *open shop* on the Sabbath. It is insisted the word *shop* is the equivalent and of the same legal import of the word *store*, in the connection in which the latter word is found in the statute, and that therefore the count is good. The word *store* is of larger signification than the word *shop*. It not only comprehends all that is embraced in the word *shop*, when that word is used to designate a place in which goods or merchandise are sold, but more, a place of deposit, a *store house*. In common parlance the two words have a distinct meaning. We speak of *shops* as places in which mechanics pursue their trades, as a *carpenter's shop, a blacksmith's shop, a shoemaker's shop*. While, if we refer to a place where goods and merchandise are bought and sold, whether by wholesale or retail, we speak of it as a *store*. Druggists are excepted from the operation of the statute. Unless in derision, we would never say a *drug shop*, but a *drug store*. There are but few, if any, who would understand that a man had a *store*, and was engaged in buying and selling goods or merchandise, if we said he had a *shop*. We never speak of the place in which the mechanic exercises his trade as a *store*, nor do we speak of the place in which goods are bought and sold as a *shop*. A *dollar shop* would scarcely convey to the understanding of any the idea of a place where goods purport to be sold at a price not greater than one dollar for any article exhibited,

[Sparrenberger *v.* The State.]

while such is the signification of *dollar store*. Whatever may be the signification lexicographers attach to words, they acquire a local meaning, and often a peculiar meaning, in particular communities, which courts must observe in the construction of statutes, or of contracts, or of conveyances, if the legislative intent or the intent of parties is to govern. Hence, technical words receive their technical signification in the absence of a countervailing intent, and so of terms of art. Words in common use, when a manifest legislative intent is not contravened, receive their ordinary and popular signification. In *Mayor, &c.* v. *Winter*, 29 Ala. 651, the words "internal improvements," in a statute conferring upon a municipal corporation authority to issue bonds for the purpose of such improvements, was not construed as referring merely to *improvements* within the corporation, but to *improvements* within the State, because such was the popular signification of the words. In *Favers* v. *Glass*, 22 Ala. 621, it was declared that when a word is used in a statute which has two significations, it should ordinarily receive that meaning which is generally given to it in the community, unless it is inconsistent with the manifest legislative intent. The word *store* has with us a popular signification as a house where goods are bought and sold, or stored, and such is its signification in the statute under consideration. The statute intends the prohibition of worldly avocations on the Sabbath. It is the keeping open the store for buying and selling, or for receiving and storing on that day, which is declared criminal. But it is said the word *store* is preceeded by the words *merchant or shop-keeper*, as descriptive of the persons who may commit the offense. The word *shop-keeper* was employed, from abundant caution, to exclude a construction which may have been supposed possible, if the word merchant stood alone, that only large, not small, dealers were within the statute. The word *shop*, in any signification which may be given it, is narrower in meaning than the word *store*, and cannot therefore be deemed its equivalent, or of the same legal import. *Canney* v. *State*, 19 N. H. 135. The warehouseman who on the Sabbath keeps his storehouse open, and pursues his ordinary business therein, would violate the statute; and yet it would be a mere perversion of words to say he kept *open shop* on the Sabbath. It is to be regretted that inaccuracies of this kind should creep in, (vitiating?) criminal convictions. It can be avoided by pursuing the words of the statute, when these fully describe the offense. If words are substituted for them, the pleader should be careful to select such as are equivalent in signifi-

cation to the statutory words. Keeping open shop on the Sabbath is not an offense, and that is the grievance of the charge in the count. Intendments in support of indictments are not allowable. The averments of the indictment may all be true, and the appellant guiltless. He may be a merchant or shop-keeper, owning a blacksmith or other shop for mechanical trades, which he kept open on the Sabbath, thus verifying every word of the indictment, and the statute not violated.

The grand jury, in the investigation of a charge for any indictable offense, can receive no other evidence than is given by witnesses before them, or legal documentary evidence. R. C. § 4103. The concurrence of at least twelve grand jurors is necessary to find an indictment. R. C. § 4104. If the matter of the pleas in abatement is true, these statutory provisions were violated or disregarded by the grand jury, and the paper purporting to be an indictment is not such in fact. While the proceedings are *in fieri*, the court has an inherent power to strike from its files any paper which has been wrongfully, without the warrant of law, introduced into them; or to amend defects, or to expunge from its records matter not true or pertinent, which may have been inadvertently, or, if the fact should appear, fraudulently, inserted in them. When, before final judgment, and there has not been a want of diligence in calling the attention of the court to the fact, it appears that a paper purporting to be an indictment has not been returned into court as a "true bill," with the concurrence of twelve of the grand jurors, it should be quashed and stricken from the files. So, if it appears it was found without the evidences of witnesses, or without legal documentary evidence. We adopt the language of the court in the case of the *U. S.* v. *Coolidge,* 2 Gall. 367. "The grand jury is the great inquest between the government and the citizen. It is of the highest importance that this institution be preserved in its purity, and that no citizen be tried until he has been regularly accused by the proper tribunal." See also 1 Green. Ev. § 252; Low's case, 6 Greenl. (Me.) 439. The objection cannot, however, be taken by plea. *People* v. *Hulbert,* 4 Denio, 133. As a general rule, pleading to an indictment admits its genuineness as a record. *State* v. *Clarkson,* 3 Ala. 378; *Russell* v. *State,* 33 Ala. 366. The inquiry the objection involves is not triable by a jury; it is addressed to the court, and to its power over its records. The indictment is not abated; a better indictment is not given; that which appears on the file may be perfect in form and allegation, free from defects. The ob-

jection, as is said in Low's case, goes not to its abatement, but to its annihilation—to the denying it ever had a legal existence. The verity of a record is not disputable by plea, nor by evidence on the trial; for a plea averring against a record cannot be entertained, and evidence is not admissible, unless it is in corroboration of, or corresponds to pleading. But the court has power over its records, and it is a sacred duty that they should be made to speak the truth, and not witnesses of falsehood. On a motion to quash or to strike from the files, addressed to the court with reasonable diligence after the facts have been discovered, supported by evidence, leaving no reasonable doubt on the mind of the court that the indictment was not the finding of twelve of the grand jury; or that it was found without the evidence of witnesses before them, or legal documentary evidence, truth and justice, the preservation of the verity and dignity of its own records, the protection of the citizen and constitutional guaranty demand that the court should expunge the spurious paper. It is not an accusation the citizen should be held to answer; it is without warrant of law. This case does not require us to say more. The pleas in abatement were subject to demurrer, because the matter they contained was not the subject of a plea. It is scarcely necessary to say that when it appears witnesses were examined by the grand jury, or the jury had before them *legal documentary evidence*, no inquiry into the sufficiency of the evidence is indulged. A former finding by a grand jury which has been quashed, or on which a *nol. pros.* has been entered, is not *legal documentary evidence* on which a succeeding grand jury can properly find an indictment.

For the error in overruling the demurrer to the indictment, the judgment must be reversed, and the cause remanded; the appellant must remain in custody until discharged by due course of law.