# Swann & Billups *v.* Jenkins.

*Ejectment by Trustees, for Railroad Lands.*

1. *Legislative grants of lands.*—The rule is settled in this country, contrary to the rule of the civil law, that public legislative grants are always construed strictly against the grantee, and in favor of the public, and that nothing passes by implication.

2. *Title of statute.*—By the modern rule of construction, the title of a statute, or public legislative act, may be looked to, in doubtful cases, even in the absence of constitutional provisions, to throw light on the legislative intention, so as to remove ambiguities.

3. *Acts of Congress granting public lands in aid of railroads in Alabama.*—The acts of Congress granting public lands, in alternate sec-

tions, to aid in the construction of certain railroads in Alabama (11 U. S. Stat. at Large, 17; 16 *Ib.* 45), two of which roads have been since consolidated under the corporate name of the Alabama & Chattanooga Railroad Company, a part of whose track is located in Georgia, do not include or apply to the public lands in Alabama which are located within the prescribed distance (six miles on either side) of that part of the road which is in Georgia.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. JAMES AIKEN.

This action was brought by John Swann and John A. Billups, trustees in a deed of trust executed in the name of the State of Alabama, on the 8th February, 1877, under the provisions of the act approved February 23d, 1876, known as the "Debt Settlement Act," against George W. Jenkins, to recover the possession of a tract of land, which was described as the north-east quarter of the south-west quarter of section fifteen (15), township three (3) south, range ten (10) east; and was commenced on the 4th July, 1884. The defendant entered into the usual consent rule, and pleaded not guilty; and the cause was tried on issue joined on that plea.

On the trial, as appears from the bill of exceptions, the plaintiffs read in evidence—1st, the act of the General Assembly chartering the Wills Valley Railroad Company, which was approved February 3d, 1852 (Sess. Acts 1851-2, pp. 178-83) ; 2d, the act of the General Assembly chartering the North-east and South-west Alabama Railroad Company, which was approved December 12th, 1853 (Sess. Acts 1853-4, pp. 270-80) ; 3d, the act approved October 6th, 1868, authorizing the consolidation of said two railroad companies into one new corporation under the name of the Alabama & Chattanooga Railroad Company (Sess. Acts 1868, pp. 209-11); 4th, the act approved November 17th, 1878, entitled "An act relating to the Wills Valley Railroad Company and the North-east and South-west Alabama Railroad Company," which also had reference to the consolidation of said companies (Sess. Acts 1868, pp. 345-48) ; 5th, the act of Congress of the United States approved June 3d, 1856, entitled "An act granting public lands, in alternate sections, to the State of Alabama, to aid in the construction of certain railroads in said State" (11 U. S. Stat. at Large, 17) ; 6th, the subsequent act of Congress, approved April 10th, 1869, entitled "An act to renew certain grants of land to the State of Alabama" (16 *Ib.* 45), by which the rights and privileges conferred by said former act were revived, renewed, and extended ; 7th, the act of the General Assembly of Alabama approved February 11th, 1870, entitled "An

[Swann & Billups v. Jenkins.]

act to loan the credit of the State of Alabama to the Alabama and Chattanooga Railroad Company, for the purpose of expediting the construction of the railroad of said company within the State of Alabama" (Session Acts 1869–70, pp. 89-92) ; 8th, the mortgage executed to the State by the said railroad company, under the provisions of said last named act ; and, 9th, the deed of trust executed to the plaintiffs, under the provisions of the "Debt-Settlement Act." This was the plaintiffs' documentary title, and it was agreed that the several legislative acts, as printed in the several volumes referred to, might be regarded as incorporated in the bill of exceptions.

It was proved, also, that the land sued for was within six miles of the track of said railroad company, as located and running through the State of Georgia, near the boundary line of Alabama, but not within that distance of any part of the road located in Alabama; and the plaintiffs proved that, at the time said road was located, in November, 1858, and a map showing its location throughout its entire route was filed in the General Land Office at Washington, said land belonged to the United States. The defendant proved that he entered on the land in 1868, occupied and improved it, filed a claim of homestead under the laws of the United States, and obtained a patent on the 10th December, 1885 ; and that he had been in possession continuously since his entry on it in 1868. On this evidence, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiffs excepted to this charge, and they now assign it as error.

SAM. F. RICE, for the appellants —The power of Congress to grant public lands in aid of railroads is not dependent on State boundaries. Its power to grant lands in Alabama, in aid of a railroad partly located in Georgia, is clear and undoubted. In the construction of the grants here involved, the court may recur to the history of the times when it was made, and to the public facts and legislative acts then in existence, of which Congress can not be supposed to have been ignorant.—*United States v. Union Pacific Railroad Co.*, 91 U. S. 91. At the time this grant was made (June 3d, 1856), two railroad corporations had been chartered and organized in Alabama, looking to the connection which was finally consummated at Chattanooga by the consolidated company under which the plaintiffs claim ; one of these corporations had also been chartered by legislative act in Georgia, authorizing the construction of its road through a part of that State ; and each of them was authorized by

statute to extend its road through Tennessee to Chattanooga, or other terminus in Tennessee.—Sess. Acts of Georgia, 1853-4, pp. 464-66 ; Sess. Acts of Tennessee, 1853-4, p. 698. Knowing these facts, Congress passed the act approved June 3d, 1856, granting to the State of Alabama, "for the purpose of aiding in the construction of railroads, . . from Gadsden, to connect with the Georgia and Tennessee and Tennessee line of railroads, though Chattanooga, Wills' and Lookout Valleys, . . every alternate section of land designated by odd numbers, for six sections in width on each side of each of said roads."—11 U. S. Statutes at Large, 17. The grant contains an express exception, as to lands which had been already sold by the United States, or which were subject to a claim of pre-emption at the time the road might be definitely located ; and provided indemnity in these exceptional cases. The courts have no power to add to these exceptions. Congress must have known that a part of the road would necessarily run through Tennessee, and another part through Georgia ; but no exception from the grant is made as to this part of the road. The grant is of every alternate section, in Alabama, of public lands situated within six miles of the track of the road as definitely located, whether in Alabama or Georgia.—119 U. S. 55, 73. The title of the act can not extend or restrict any positive provision of the enactment itself —Potter's Dwarris on Statutes, 265-70 ; Sedg. Stat. 50-52 ; *Hadden v. Collector*, 5 Wall. 107 ; *Mace v. Cadell*, Cowp. 232. Attention is particularly invited, also, to the difference of phraseology between the first section of the act in question, here involved, and the sixth section, which grants public lands in aid of other roads.

SOMERVILLE, J. —The present suit involves a new phase of the act of Congress, approved June 3d, 1856, entitled " An act granting public lands, in alternate sections, to the State of Alabama, to aid in the construction of certain railroads in said State" (11 U. S. Stat. at Large, 17–18), a law which has been heretofore many times before this court for construction.— *Ware v. Swann*, 79 Ala. 330 ; *Standifer v. Swann*, 78 Ala. 88 ; *Swann v. Lindsey*, 70 Ala. 507. This act, which was afterwards revived and kept in force by the subsequent act of April 10, 1869 (16 U. S. Stat. at Large, 45), granted to the State of Alabama, for the purpose of aiding in the construction of two railroads therein named, which were afterwards consolidated under the corporate name of the "Alabama and Chattanooga Railroad Company," every alternate section of land designated by odd

31

numbers, and within six miles of either side of the projected line of said roads.

It is contended that the grant embraces all odd sections of land in Alabama, which are within six miles of that portion of the road which has been constructed *through the State of Georgia*, the land in controversy being within this category.

We can see nothing in the act which warrants such a construction of it. It nowhere declares, either expressly, or by what we deem to be clear implication, that lands situated in Alabama are granted to aid in the construction of any part of either of these roads located out of the State. This view alone would be conclusive of this case, against the appellants, upon the now well-settled principle of the common law, that public grants are always strictly construed against the grantees, and in favor of the government, and they, therefore, pass nothing to the grantee by implication. This rule has often been applied to legislative grants made by the government to corporations, and the principle announced, contrary to that of the civil law, that, while such grants will be interpreted, as far as possible, to effect the intention of the grantor, yet, in cases of doubt or ambiguity, they will always be construed most strongly against the grantee, and in favor of the public, so that what is not unequivocally granted will be deemed to have been withheld.—*Charles River Bridge v. Warren Bridge*, 11 Pet. 421; *Rice v. Railroad Co.*, 1 Black, 359; *Slidell v. Grandyear*, 111 U. S. 412; *Richmond R. R. Co. v. Louisa R. R. Co.*, 13 How. (U. S.) 81; Sedgwick on Stat. & Const. Law, 338–341.

But we may go further, and say, that all the implications of the act in question are against the construction contended for by appellants' counsel.

We notice, first, the title of the act, which purports to grant these lands to the State of Alabama, " to aid in the construction of certain railroads *in said State.*" This is conceded not to be always a very sure guide by which to ascertain the legislative intent. The titles to acts of Parliament in England are known formerly to have been framed by the clerk of the house in which the bills originated, and, being no part of the acts, they were seldom read more than once. Hence, there was good reason for the rule, that the title afforded "no legislative import," as was sometimes said. Under the modern rule, the title is regarded as a part of the act, even where the constitution of a State does not make it so, by requiring the subject of the act to be clearly expressed in the title, as is now the case in this and many other States. While it can not be used, apart from the in-

[Swann & Billups v. Jenkins.]

fluence of such a constitutional provision, to extend or restrain any positive provisions contained in the body of the act, it may often be looked to, in doubtful cases, to throw light upon the legislative intention, so as to remove ambiguities. This rule was settled in Alabama, as far back as *The State v. Duncan*, 9 Port. 260, decided nearly fifty years ago; and it is now the settled law, both in England and in this country.—*U. S. v. Palmer*, 3 Wheat. 610; *Harris v. San Francisco*, 52 Cal. 553. There are, of course, many laws, in which the titles are framed with the view of artfully misleading as to the real purpose of such enactments. There are others embracing "most incongruous provisions, having no reference to the matter specified in the title."—*Hadden v. The Collector*, 5 Wall. 107. In these, and like cases, the title can afford but a dim light in aid of judicial construction. We can discover nothing, however, indefinite or misleading about the title of this act. There are no positive provisions, or even implications, in the body of the act, repugnant to the idea embraced in the title, that the grant was made "to aid in the construction of railroads *in said State*" of Alabama, and in none other. Had this title read, "to aid in the construction of railroads in the States of Alabama and *Georgia*," it is manifest that a strong argument could and would be urged in favor of the appellants' contention, based on the implied intention suggested by such a title.

A strong implication in the same direction is also afforded by section 4 of the act. This section devolved on the Governor of Alabama the duty of certifying to the Secretary of the Interior, at Washington, when any twenty continuous miles of these roads were completed, so that the lands might be sold or disposed of in the mode prescribed by the terms of the law, and only as the work of construction progressed. The Governor of Alabama was selected for the discharge of this duty, for obvious reasons. He could easily inform himself as to the progress of any road within his own jurisdiction, and satisfactorily certify as to its *status*. It would not be so as to the construction of a railroad in another State. It would require unambiguous language to authorize the inference that the Governor of Alabama, and not the Governor of Georgia, would be selected to give official information to the General Government of a matter transpiring in Georgia.

We need pursue the argument no further. Every elementary principle of construction forces the conclusion, that the proposition urged by appellants' counsel can not be sustained. The charge of the court, to find for the defendant, was free from error; and the judgment is affirmed.