# Swann & Billups *v.* Larmore.

*Ejectment for Lands claimed under Railroad Grant.*

1. *Grant of lands in aid of railroads, by act of Congress of June 3d, 1856 ; what title passed thereby.*—Under the provisions of the act of Congress approved June 3d, 1856, "granting public lands in alternate sections to the State of Alabama, to aid in the construction of certain railroads" (11 U. S. Statutes at large, p. 17), and the subsequent act approved April 10th, 1869, renewing said grant, a present title to the lands passed to the State, subject to be devested, by proper action taken, for breach of the condition subsequent annexed to the grant; though this title did not attach to any specific sections of land, until the route of the particular railroad, to aid in the construction of which the grant was made, was definitely located within the time limited by said acts of Congress.

2. *Same ; power of sale.*—Under said acts of Congress, the State held the lands so granted in trust for the purposes specified, and had absolute power to sell one hundred and twenty sections, within a continuous length of twenty miles of the particular railroad, before any work was done on the road; and this power of sale it might lawfully assign or transfer to the railroad corporation itself.

3. *Same ; legislative joint resolutions of 1857–8, transferring said lands to railroad company, and subsequent sale by company.*—By joint resolutions of the General Assembly, approved January 30th, 1858, it was declared, "that so much of said lands, interest, rights, powers and privileges, as are or may be granted and conferred, in pursuance of the said act of Congress, to aid in the construction of a railroad from Gadsden to connect with the Georgia and Tennessee line of railroads, through Chattooga, Wills, and Lookout valleys, are hereby disposed of, granted to, and conferred upon the Wills Valley Railroad Company, to be used and applied by said company upon the terms, conditions, and under the restrictions in said act of Congress contained." In 1861, said railroad company sold the lands here sued for, which are within six miles of the

[Swann & Billups v. Larmore.]

railroad, and within twenty miles of the point where it crosses the boundary line of Georgia, but more than twenty miles from Gadsden, and more than twenty miles from Wauhatchie in Tennessee, where work on the road was commenced, five miles from Chattanooga, where the Georgia and Tennessee railroads meet and intersect; and the purchase-money paid by the company in the construction of the road. *Held*, that the sale was authorized by the said acts of Congress and joint resolutions of the General Assembly; and there being no proof of any other sale having been made by the company, that the court would not presume that the absolute power of sale had been previously exhausted.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. LOUIS WYETH

This action of ejectment was brought to recover certain lands particularly described, which constituted parts of sections twenty-five (25) and thirty-five (35), in township four (4), range ten (10) east; and was commenced on the 2d September, 1878. The declaration contained a count on a demise from the State of Alabama, on the 10th April, 1872; and a count on a demise from John Swann and John A. Billups, as trustees appointed under the provisions of the "Debt Settlement Act" approved February 23d, 1876, made on the 10th April, 1877. Vance C. Larmore, the real defendant, appeared, entered into the usual consent rule, and pleaded the general issue; and the cause was tried on issue joined on this plea. On the trial, as the bill of exceptions states, "the following facts were agreed on and admitted by the parties:"

"1. That the lands here sued for formed part of the lands granted and conveyed to the State of Alabama by the act of Congress approved June 3d, 1856, entitled 'An act granting public lands in alternate sections to the State of Alabama, to aid in the construction of certain railroads in said State'; and formed a part of those embraced in and governed by said act, and also by the act approved April 10th, 1869, entitled 'An act to renew certain grants of land to the State of Alabama,' unless the title and claim under the defendant's purchase and deed, hereinafter set out, took said lands out of the operation of said act of Congress last named; and that said lands are part of the lands embraced by the joint resolutions of the General Assembly of Alabama, approved on 30th January, 1858, entitled," &c., "as found in the Session Acts 1857–8, p. 430."

"2. That the said lands sued for form part of the lands embraced and conveyed in and by the mortgage which was executed by the Alabama and Chattanooga Railroad Company to the State of Alabama, on the 2d March, 1870, under and in pursuance of the act of the General Assembly approved February 11th, 1870, entitled 'An act to loan the credit of the State of Alabama to the Alabama and Chattanooga Railroad Company, for the purpose of expediting the construction of

[Swann & Billups v. Larmore.]

the railroad of said company within the State of Alabama'; which mortgage was duly recorded," and is here set out in the bill of exceptions.

"3. That the State of Alabama, by Geo. S. Houston as governor, on the 8th February, 1877, conveyed the lands here sued for, and all other lands embraced by said mortgage, to the said John Swann and John A. Billups as trustees, under and in pursuance of the provisions of the act of the General Assembly of Alabama, approved February 23d, 1876," being the act known as the "Debt Settlement Act;" which conveyance is here set out in the bill of exceptions.

"4. That the Wills Valley Railroad Company was chartered by an act of the General Assembly of Alabama approved February 3d, 1852, and its charter was afterwards amended and enlarged at various times," as shown by the published statutes here referred to; "and that said railroad company, under and in pursuance of acts of the General Assembly passed in 1868, became the purchaser of all the rights, property and franchises of the North-East and South-West Alabama Railroad Company, and immediately thereafter (and in 1868) became a corporation then and ever since known as the Alabama and Chattanooga Railroad Company, and clothed and invested with all the rights, property and franchises of the Wills Valley Railroad Company and of the North-East and South-West Alabama Railroad Company.

"5. That the Wills Valley Railroad Company organized before the — day of October, 1857, went to work, and on the — day of December, 1860, their trains were running from Wauhatchie, Tennessee, to Trenton, in Georgia, a distance of thirteen miles; and purchased of the Nashville and Chattanooga Railroad Company the right to use the railroad of said company, and were thus running from Wauhatchie to Chattanooga, a distance of five miles further, on the road of said Nashville and Chattanooga Railroad Company; and that said Wills Valley Railroad Company had also graded their road-bed from Trenton, Georgia, to Collinsville, Alabama, a distance of some forty-five miles in all, and some thirty-five miles within the State of Alabama; that said grading began at Wauhatchie, and progressed south-west, through Georgia, and into Alabama, from that direction; that said road-bed was located and graded, but not completed, all along that portion of the road where the lands here sued for lie, and the entire line and bed of said Wills Valley railroad had been duly located before 1860; and that said lands are embraced in the certificate of the commissioner of the General Land-Office at Washington, received by said railroad company, June 30th, 1860, through the Governor.

"6. That no railroad whatever, nor any part of any railroad,

has ever been graded, built or constructed, by any of the above-mentioned Alabama corporations, between Wauhatchie and Chattanooga; that Wauhatchie is in Tennessee, five miles south-west from Chattanooga, and on the line of the Wills Valley railroad, which was located prior to 1860; that the only railroad ever constructed between Wauhatchie and Chattanooga is the Nashville and Chattanooga road, the use of which has been obtained from the owners of that road by the Alabama and Chattanooga Railroad Company, by contracts of short duration, renewed from time to time; that Chattanooga is in Tennessee, and is the place where the Georgia and Tennessee lines of railroad first meet and intersect.

"7. That the lands here sued for are situated in DeKalb county, and were in the defendant's possession at the commencement of this suit; that they lie within six miles of the road-bed of said railroad company, and within twenty miles of the boundary line between Georgia and Alabama, where said granted lands lie; that the board of directors of said railroad company met on the—day of December, 1860, and appointed John L. Barnard entry-taker, for the purpose of disposing of the lands sued for; that said lands were advertised for sale in a weekly newspaper published in Chattanooga, and by posting notices at various places in the county for thirty days, and were offered for sale, at Valley-Head in said county, on the 20th February, 1861, and were bought by the defendant at said sale, at the minimum price of $2.50 per acre; that the defendant received his certificate of purchase from the company's entry-taker, and took possession of said lands, and paid the purchase-money soon afterwards, to-wit, on the 5th November, 1861, but, by reason of the unsettled condition of the country, did not receive his deed until June 7th, 1866," which is here set out; "that the purchase-money for said lands was used exclusively in the construction of said road, and was disposed of only as the road progressed; and that the defendant has continued in the possession of said lands to this date, except one or two years after March, 1870, during which one Severance had possession under claim of lease or purchase from the Alabama and Chattanooga Railroad Company.

"It is further agreed, also, that the road of the Wills Valley Railroad Company, referred to in its charter, was not completed from Wauhatchie to Attalla, near Hampton's bridge and farm, as its south-western terminus in Alabama, before May, 1871, but was constructed, except the grading above mentioned in Alabama, after March, 1870, but not to Gadsden, and was never constructed to Gadsden, nor nearer to Gadsden than Attalla, which is five miles from Gadsden."

The several acts of Congress, acts and joint resolutions of the

General Assembly of Alabama, which, by agreement, were made
parts of the bill of exceptions, are set out in full in the report
of the case of *Swann & Billups v. Lindsey* (*ante*, p. 507),
and it is unnecessary to repeat them here.

"The foregoing were all the facts in the case, as shown or
agreed upon on the trial;" and on these facts, the court charged
the jury, on the written request of the defendant, "that upon
the issue joined in this case, and upon the facts agreed on by
the parties, the defendant is entitled to recover." The plaintiffs
excepted to this charge, and they here assign it as error.

RICE & WILEY, and L. A. DOBBS, for appellants.—1. Con-
gress has undoubted power to grant public lands, for the pur-
pose of aiding in the construction of railroads, or to accomplish
any other purpose deemed beneficial to the public, upon such
terms, conditions and restrictions, as may be inserted in the
grant.— *United States v. Hall*, 98 U. S. 351; *Schulenberg v.
Harriman*, 21 Wallace, 59; *Farnsworth v. M. & P. Railroad
Co.*, 92 U. S. 65. When such grant is made, the terms, condi-
tions and restrictions therein contained and expressed, are the
supreme law by which rights claimed under it are to be deter-
mined.—Cases cited.

2. By the terms of the act of Congress of June 3d, 1856,
the legal title to the lands involved in this suit was vested in
the State of Alabama, as trustee, so soon as the railroad, in aid
of which the grant was made, was definitely located.—*Schulen-
berg v. Harriman*, 21 Wallace, 44; *Farnsworth v. Railroad
Co.*, 92 U. S. 48. This legal title was coupled with a re-
stricted power of sale, but not with any interest in or to the lands.
As said by the Supreme Court of the United States, construing
a similar grant, "The act of Congress imposed conditions
upon alienation, except as to the first one hundred and twenty
sections, which the [State] could not disregard. It declared
that the lands should be exclusively applied to the construction
of the road in aid of which they were granted, and to no other
purpose whatever, and should be disposed of only as the work
progressed. It provided their sale should be made in parcels,
as specified portions of the road were completed, and only in
that manner. The evident intention of Congress was, to secure
the proceeds of the lands for the work designed, and to prevent
any alienation in advance of the construction of the road, with
the exception of the first one hundred and twenty sections.
It made the construction of portions of the road a condition
precedent to a conveyance of any other parcel by the State.
No conveyance, in disregard of this condition, could pass any
title to the company."—92 U. S. 65; 21 Wallace, 59; *Scipio v.
Wright*, 101 U. S. 665; *Hardy v. Br. Bank*, 15 Ala. 730.

[Swann & Billups v. Larmore.]

3.   The lands involved in this suit are not a part of the first one hundred and twenty sections, as to which a power of sale was given in advance of any work done on the road.   Those sections must begin at one of the *termini* of the road, and proceed thence continuously for twenty miles along the line of the road.   The act of Congress contemplated that the Wills Valley railroad should be constructed "*from Gadsden*, to connect with the Georgia and Tennessee, and Tennessee line of railroads;" and the agreed facts show that the road was commenced at Wauhatchie in Tennessee, which is shown to be the first place where connection could be made with any Georgia railroad. The lands sued for are shown to be more than twenty miles from either *terminus*—from either Gadsden or Wauhatchie; and are, therefore, not within the first one hundred and twenty sections.   The act of Congress, in this particular, pays no regard to any State line, but confers the odd-numbered sections of the public lands in Georgia, lying along the Georgia portion of the road, precisely as those in Alabama; therein differing from the grant to the North-East and South-Western road, contained in the 6th section, which is limited "to some point on the Alabama and Mississippi State line."

4.   The legislative resolutions of January 30th, 1858, so far as they conflict with the provisions of the said act of Congress, are inoperative and void.—*Railroad Company v. Prescott*, 16 Wallace, 603–9; 92 U. S. 65; 101 U. S. 665; 21 Wallace, 59. These resolutions can not be considered as a sale, within the meaning of the term as used in the act of Congress.— *Williamson v. Berry*, 8 Howard, 544; *Gunter v. Leckey*, 30 Ala. 591. If they could be so construed, they could not be operative beyond the first one hundred and twenty sections of land, and could not convey to the railroad company any greater power than the State itself possessed over them; and the words of apparent grant are coupled with the qualifying words, "to be used and applied by said company upon the terms, conditions, and under the restrictions in said act of Congress contained."   As a conveyance of the legal title, the railroad not being then constructed, and the trust being then merely executory, the legislative resolutions are wholly void.—Smith on Statutes, § 667; 2 Perry on Trusts, §§ 769, 779, 783, 785; 11 Vesey, 482; 6 Otto, 316; 2 Sugden on Powers, 479, 456, 507, mar.   As a grant or conveyance, said resolutions are void for uncertainty.—*Deloach v. State Bank*, 27 Ala. 437.

5.   The statute of limitations is no bar to the suit, because, unlike the case of *Miller v. The State*, 38 Ala. 600, the State had not executed the trust, and it still has an interest in the proceeds of sales of the lands, to the extent of ten per-cent. That the statute of limitations does not run against the State, or

against the United States, see *United States v. Hoar*, 2 Mason, 312; *Swearingen v. United States*, 11 Gill & J. 373; 2 Hill, N. Y. 59; Scam. Ill. 106. Moreover, the defendant's possession was interrupted in 1870.—*Armstrong v. Morrill*, 14 Wallace, 146; 2 Brick. Dig. 223, § 86.

McSPADDEN & CARDEN, *contra.*—The act of Congress passed to the State a present interest in the lands granted, and the title became perfect when the route of the road was fixed.—*Mo. & Kan. Railroad Co. v. Kan. Pac. Railroad Co.*, 7 Otto, 496; *Leavenworth v. United States*, 92 U. S. R. 733; 21 Wallace, 44. The right to sell one hundred and twenty sections, in a continuous length of twenty miles, was given absolutely, without any prescribed machinery of sale, and even the forfeiture does not relate to these. When a stranger purchases, pays the purchase-money, and is put in possession, the proceeds being strictly applied to the construction of the road, as in this case was shown, the purposes of the grant are fully satisfied, and the purchaser should be protected.—*Farnsworth v. M. & P. Railroad Co.*, 2 Otto, 48.

2. The lands sold, including those here sued for, are at the *terminus* of the grant, being within four miles of the boundary line between Alabama and Georgia, and within six miles of the road.

3. Whatever right or title the plaintiffs may have, was derived from or through the Wills Valley Railroad Company, whose successor they are; and they are estopped by the deed of that company.—1 Greenl. Ev. §§ 207–8, 22–4; 3 Washb. Real Property, 68–9, 71, 79–80; Bigelow on Estoppel, 246, 252, 336; 22 Ala. 543; 19 Ala. 430; 16 Ala. 167; 19 Ala. 198; 27 Ala. 532; 17 Ala. 752; 39 Ala. 42; 31 Ala. 136; Tyler on Ejectment, 566.

4. The action was barred by adverse possession and the statute of limitations.—Code, §§ 3232, 3236; *Miller v. The State*, 38 Ala. 600; 2 Greenl. Ev. §§ 430–31; 3 Wash. R. P. 141, § 38; Angell on Lim. 412–13; 2 Shars. Bla. Com. 196. The intrusion of Severence was a mere trespass, and did not break the continuity of possession.—*Bell v. Denson*, 56 Ala. 449; *Farmer v. Eslava*, 11 Ala. 1028.

STONE, J.—By act of Congress approved June 3d, 1856 (11 Stat. at large, 17–8), there was granted to the State of Alabama, for the purpose of aiding in the construction of a railroad "from Gadsden to connect with the Georgia and Tennessee, and Tennessee line of railroads, through Chatooga, Wills and Lookout valleys," alternate sections of land designated by odd-numbers, for six miles in width on each side of said railroad. This

36

statute allowed ten years for the completion of the road, and provided that, "if said road is not completed in ten years, no further sale [of the lands granted] shall be made, and the lands unsold shall revert to the United States." The railroad not being completed within the ten years, it was, on 10th April, 1869 (16 Stat. at large, 45), enacted, that said act of June 3d, 1856, "is hereby revived and renewed, subject to all the conditions and restrictions contained in the act referred to, and subject to the further limitation, that if [said railroad] is not completed within three years from the passage of this act, no further sale [of the granted lands] shall be made for the benefit of such railroad, and the lands unsold shall revert to the United States." Section 4 of the act of June 3d, 1856, provides, "That the lands hereby granted to said State shall be disposed of by said State only in the manner following, that is to say: that a quantity of land, not exceeding one hundred and twenty sections, * * and included within a continuous length of twenty miles, * * may be sold; and when the Governor of said State shall certify to the Secretary of the Interior that any twenty continuous miles of * * said road is completed, then another quantity of land hereby granted, not to exceed one hundred and twenty sections for * * said road having twenty continuous miles completed as aforesaid, and included within a continuous length of twenty miles, * * may be sold; and so, from time to time, until said road is completed." Sec. 3: "That the said lands hereby granted to the said State, shall be subject to the disposal of the legislature thereof, for the purpose aforesaid, and no other."

The Wills Valley Railroad Company was chartered February 3d, 1852.—Sess. Acts, 1851–2, 178. The route and extent of said railroad was, "from some convenient point on the Alabama and Tennessee Rivers railroad, at or near the farm of James Hampton; thence the most practicable route through the county of De Kalb, to the Georgia line, in a direction to intersect the Georgia and Tennessee railroad, at some convenient point in Lookout valley." By joint resolutions, approved January 30th, 1858 (Sess. Acts, 1857–8, page 430), the legislature of Alabama designated the application of said lands, and resolved—Sec. 4: "That so much of said lands, interest, rights and powers and privileges, as are or may be granted and conferred, in pursuance of the said act of Congress, to aid in the construction of a railroad from Gadsden to connect with the Georgia and Tennessee line of railroads, through Chattooga, Wills and Lookout valleys, are hereby disposed of, granted to, and conferred upon the Wills Valley Railroad Company, * * to be used and applied by said company upon the terms, condi-

tions, and under the restrictions in said act of Congress contained."

The Wills Valley Railroad Company organized under its charter, and surveyed and "definitely fixed" the line of its railroad prior to the year 1860. The lands in controversy are parts of sections having odd numbers; are within six miles of the railroad as definitely fixed, and are within less than twenty miles of the line of the State of Georgia. In 1861, the Wills Valley Railroad Company sold the lands here sued for; the purchase-money was paid during that year, and a deed of conveyance was made to the purchaser in 1866. He and those claiming under him, including the real defendant in this suit, trace a regular line of conveyances from the first grantee down to the present occupant. The question is, had the Wills Valley Railroad Company authority to sell and convey the lands? The present record contains no evidence of the sale of any other lands than those here sued for. If there had been a sale of any lands within any other section of twenty continuous miles, the question would be different. We have, however, the evidence of only one sale made, and that within the range of the first section of twenty continuous miles, computing the measurement from the line of the State of Georgia. The grant was of lands in the State of Alabama. The Federal Government owned no lands in the State of Georgia, and, therefore, could grant none in that State.

On the very day (June 3d, 1856) on which the act of Congress we are construing was passed, the "act granting public lands to the State of Wisconsin to aid in the construction of railroads" became a law.—11 Stat. at large, 20. The two statutes are not distinguishable in their provisions, and are as nearly identical in language as the nature of the objects would allow. The act giving aid to railroads in Wisconsin was construed in *Schulenberg v. Harriman*, 21 Wall. 44. The entire court concurred in the opinion, which was delivered by Mr. Justice FIELD. The court said: "That the act of Congress of June 3d, 1856, passed a present interest in the lands designated, there can be no doubt.   *   *   The power of disposal, and the provision for the lands reverting, both imply what the first section declares, that a grant is made; that is, that the title is transferred to the State. It is true that the route of the railroad, for the construction of which the grant was made, was yet to be designated; and until such designation, the title did not attach to any specific tracts of land. The title passed to the sections, to be afterwards located. When the route was fixed, their location became certain, and the title, which was previously imperfect, acquired precision, and became attached to the land." In the same case it had been previously said:

"The State, by the terms of the grant from Congress, possessed no authority to dispose of the lands beyond one hundred and twenty sections, except as the road, in aid of which the grants were made, was constructed." In *Farnsworth v. Minn. & Pac. R. R. Co.*, 92 U. S. (2 Otto) 49, 65, the court said: "The act of Congress granting lands to the Territory of Minnesota imposed conditions upon their alienation, except as to the first one hundred and twenty sections, which the Territory could not disregard."—*Atchison, Top. & S. F. R. R. Co. v. Bobb*, Kans. Sup. Ct., Law Reporter, April 20, 1881.

Now, while these utterances of the court clearly show, that neither the State nor its appointee could sell any of the granted lands beyond the one hundred and twenty sections, except as the road was constructed, as provided by the act of Congress, they affirm with equal emphasis that a railroad corporation, in whose favor such grant is made, may, without any conditions whatever, and without previous work done, sell "a quantity of land not exceeding one hundred and twenty sections, * * included within a continuous length of twenty miles." The only condition annexed to this grant, is what is denominated in the books a condition subsequent; that if said road is not completed within ten years, the lands unsold shall revert to the United States. This reversion of the unsold lands would apply equally to the first one hundred and twenty sections, and to the residue of the granted lands, remaining unsold at the end of ten years, the road not being then completed. It would not, and could not, impair or affect the sales made within the ten years, of any of the one hundred and twenty sections included in a continuous length of twenty miles, nor of those made in succeeding sections of twenty continuous miles, if preceded by the certificate of the Governor to the Secretary of the Interior, that for each such succeeding license twenty continuous miles of the railroad had been completed. The reversion applied to lands authorized to be sold, and not sold according to the requirements of the statute, and to the lands as to which the railroad had failed to put itself in position to exercise the power of sale. The cases we have quoted from define what shall be necessary to perfect the reversion for condition broken, and declare by whom that right can be exercised. That question does not arise in this case. For a further discussion of this subject, see *Swann v. Lindsey*, at present term.

We have shown, above, that the Wills Valley Railroad Company, without previous work, and without conditions precedent, was authorized to sell a quantity of land equal to one hundred and twenty sections, included within a continuous length of twenty miles. We have also shown, that the lands in controversy in this suit lie within six miles of the track of the rail-

[Western Railroad Co. v. Huss.]

road, as definitely fixed, and within twenty miles of the Georgia State line—the north-eastern terminus of the railroad, as chartered. The record, as we have said, fails to show that the Wills Valley Railroad Company sold any other lands, granted by Congress to aid in its construction. We are not permitted to presume, as a ground of reversal, that the railroad company had previously sold, of the lands granted, another tract, or other tracts, not included within the twenty continuous miles, in which the present lands are situate. There is, therefore, a failure to show that the railroad corporation had exhausted the absolute, unconditional power to sell one hundred and twenty sections, granted to it by law, by electing to sell, and selling, any portion of the lands lying within some section of twenty continuous miles, other than that in which the present tract is included.

The Alabama and Chattanooga Railroad Company acquired all the chartered powers of the Wills Valley Railroad Company. See acts approved October 6th, 1868, and November 17th, 1868; Sess. Acts, 207, 345. It acquired no right to rescind a valid sale of land previously made by the latter. Neither the mortgage to the State of Alabama, nor the subsequent re-conveyance by the State to the railroad company, embraced the lands here sued for, for neither mortgagor had any interest in the lands it could convey.

The judgment of the Circuit Court is affirmed.

SOMERVILLE, J., not sitting.