# Ware *v.* Swann & Billups.

*Ejectment by Trustees of Railroad Lands.*

1. *Deed of railroad corporation, executed by agent; consideration.*
Held, re-affirming *Standifer v. Swann & Billups* (78 Ala. 88), that a conveyance of lands which belonged to the Alabama & Chattanooga Railroad Company, executed by J. C. Stanton as general superintendent and attorney in fact, without written authority from the board of directors, or other governing body of that corporation, passed no title or estate of which a court of law could take cognizance; that if the corporation be held to have ratified the act of such agent in making the sale and conveyance, by its knowledge of the facts and its failure to dissent, such ratification could only operate as an equitable estoppel, which is not cognizable at law; and that under the provisions of the act approved February 11th, 1870, authorizing the railroad company to sell a part of the lands, but requiring the proceeds of sale to be "appropriated to the payment of the first mortgage bonds of said company" (Sess. Acts 1869-70, p. 89, § 17), the lands could only be sold for money.

2. *Limitation of action.*—The title to the lands embraced in the grant by Congress to the State of Alabama, for the benefit of certain railroads (11 U. S. Stat. at large, p. 17), was vested in the State as trustee, until the completion of the railroad, except as to the lands embraced in the first continuous length of twenty miles, which might be sold at an earlier day; and the statute of limitations not running against the State while the lands were so held, it did not begin to run against the railroad company until, by the completion of the road, it acquires the right to sue.

3. *Commencement of action; declaration and notice.*—In an action of
VOL. LXXIX.

[Ware v. Swann & Billups.]

ejectment proper, the declaration and notice serve the purpose of a summons and complaint; and the commencement of the action dates, not from the time they are served on the defendant, but from the time they are placed in the hands of the sheriff to be served; and this will be presumed, in the absence of evidence to the contrary, to be the day on which the notice bears date.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. LEROY F. BOX.

This action of ejectment was brought to recover certain lands, containing 640 acres in all, being subdivisions of three separate sections. The notice, accompanying the declaration, was dated May 10th, 1881, but was executed, as shown by the sheriff's return, on the 9th June, 1881. The plaintiffs were John Swann and John A. Billups, trustees in a deed of trust executed by Governor Houston, in the name of the State of Alabama, dated February 8th, 1877, by which all the lands and other property embraced in the mortgage executed by the Alabama and Chattanooga Railroad Company to the State, dated March 2, 1870, were conveyed to said trustees under the provisions of the act of the General Assembly approved February 23d, 1876, known as the "Debt Settlement Act." The lands sued for were embraced in the grant of public lands by Congress to the State of Alabama to aid in the construction of certain railroads; which act was approved June 3d, 1856, and its provisions renewed and extended by a subsequent act approved April 11th, 1866. These acts of Congress, which were read in evidence on the trial by the plaintiffs, may be found in the United States Statutes at large, vol. 11, pp. 17–18; vol. 16, pp. 45–6. The plaintiffs read in evidence, also, the said mortgage executed by the railroad company to the State, with its probate in the counties in which the lands conveyed were situated, the deed executed by Governor Houston to said Swann and Billups, and the said act approved February 23d, 1876, which authorized its execution. The plaintiffs proved, also, that these lands were located and set apart, with others, to the Wills Valley Railroad Company, one of the railroads specified in said act of Congress, of June 3d, 1856, to whose property and rights the Alabama and Chattanooga Railroad Company afterwards succeeded; that said Wills Valley railroad was located in October, or November, 1858, and was completed in January, 1870; and that the Alabama and Chattanooga railroad was completed on the 17th May, 1871.

Cephas Fenton and his wife, Juliette Fenton, with H. H. Brandon, were named as defendants in the notice of the casual ejector; and the notice was served on the 9th June, 1881, as above stated, on said Brandon only. A judgment by default was entered against all of said defendants, which was after-

[Ware v. Swann & Billups.]

wards set aside on motion of George C. Ware, who was then let in to defend as landlord, entered into the usual consent rule, and pleaded not guilty. Said Ware claimed the lands under a conveyance to him by said Fenton and wife, which was dated December 19th, 1870, and a conveyance to Mrs. Fenton by John C. Stanton, as general superintendent and attorney in fact of the Alabama and Chattanooga Railroad Company, which was dated October 13th, 1870. The deed of said Stanton conveyed other lands besides those here sued for, and recited as its consideration the present payment of $2,200; but the plaintiffs proved by D. J. Duffy, who was at the time an agent and land commissioner of said railroad company, that the real consideration was the exchange of other lands in Ohio, and that the lands sued for were rated in the exchange at $2.50 per acre. There was no proof that Stanton had any written authority to sell said lands, or to make any other sales of land, or that he was authorized to do so by a resolution of the board of directors of the railroad company; but it was proved that he had made many other sales as agent and general superintendent, and left with said Duffy, the land commissioner, blank deeds signed by himself, which were to be filled up and delivered on his report of a sale and the payment of the purchase-money. One Standifer, a witness for the defendant, who had testified that Stanton made many sales along the line of the road, and publicly advertised the lands for sale in the newspapers at Chattanooga, was asked by the defendant, "if he ever heard said Stanton say anything, in the presence of the president and several stockholders of said railroad company, as to his authority to sell the railroad lands;" also, "if he ever heard the president and stockholders of said company, in the presence of said Stanton, speak of the latter's authority to sell said lands for the company." On objection by plaintffs, the court refused to allow the witness to answer these questions; to which rulings exceptions were duly reserved by the defendant.

On all the evidence adduced, the court charged the jury, that they must find the issues in favor of the plaintiffs, if they believed the evidence; and to this charge the defendant excepted.

DUNLAP & DORTCH, for appellant.

SAMUEL F. RICE, contra.

SOMERVILLE, J.—The action is one in ejectment, in which the plaintiffs have elected to frame their pleadings and proceed according to the rules of the common law governing

[Ware v. Swann & Billups.]

that form of action, as they were authorized to do by the statute.

There is no denial of the fact, that the plaintiffs' title to the land in controversy will authorize a recovery by them, unless it was divested by the deed, purporting to be made in the name of the Alabama and Chattanooga Railroad Company, on October 13th, 1870, by J. C. Stanton, as general superintendent and attorney in fact of that corporation, conveying to Mrs. Julia Fenton, from whom the defendant derives title; or, unless the defendant's possession has matured into a good and superior title by operation of the statute of limitations applicable to an action of ejectment, which is ten years.

The first point is directly settled against the appellant by the case of *Standifer v. Swann & Billups*, trustees, decided at the last term.—78 Ala. 88. It was there held, that a deed to these lands made by John C. Stanton, without written authority from the board of directors, or other governing body of the railroad company for which he purported to act as agent, conveyed no legal title to the grantee, or any estate of which a court of law would take cognizance. It was further said, that the lands could lawfully be sold only for cash or money in hand, or the promise of it. There is no essential difference between the facts of this case and that. The record fails to show that Stanton was possessed of any other than oral authority to make the deed, and this was without any legal efficacy. The consideration paid by the first grantee was not money, but land situated in another State. The grantee in the deed acquired no title, and, having none, she could convey no more than she had to the defendant.

The only remaining reliance of the appellant is the statute of limitations of ten years.

When did the statute commence to run? This question was fully discussed in *Swann & Billups v. Lindsey* (70 Ala. 507), and *Swann & Billups v. Larmore* (70 Ala. 555); and we need add but little to what is said in those cases. In the former of those cases, this court entered at length upon a discussion of the proper construction of the several acts of Congress making a grant of these lands in aid of the North-East and South-West Alabama Railroad and of the Wills Valley Railroad, and the subsequent act of April 10, 1866, reviving and renewing the grant for three years in favor of these roads, the corporate existence of each of which was merged by consolidation into a new corporation known as the Alabama & Chattanooga Railroad Company, under the act of October 6, 1868, authorizing such consolidation; and the conclusion was reached, that the statute of limitations was in abeyance until the completion of the railroads for the benefit of which the grant was made. The

[Ware v. Swann & Billups.]

reason assigned was, that the title to lands occupying the *status* which these do, remained in the State, as trustee, until this event occurred, and no one else had any right to bring suit for them; and inasmuch as time never runs against the State, its title was entirely unaffected by lapse of time. The railroad company, it was added, could maintain no action, legal or equitable, until it acquired the title, or a right to the possession; and this contingency could never happen until the road was completed.—*Swann & Billups v. Lindsey,* 70 Ala. 507, *supra.*

When the deed was made by Stanton, in October, 1870, the Wills Valley Railroad Company, as we have said, had no separate corporate existence, but had become merged into the Alabama & Chattanooga Railroad Company. It never afterwards had the power to sue, its rights in this particular being transferred to its successor.—Acts Ala. 1868, pp. 207–209. The new company alone, after this, had the right to sue for these lands, and not then until the completion of the entire road. This was accomplished on May 17, 1871; and the statute of limitations became capable of operation from that day, by the existence or occurrence of the requisite conditions to set it in motion.

It is contended that the action is nevertheless barred, because it must be considered as having been commenced on June 9, 1871, when the declaration and notice in ejectment were actually served on the tenant in possession, and not on the 10th day of May, 1871, when these papers were filed in court and went into the hands of the sheriff for service. If the premises be admitted, the conclusion necessarily follows, because more than ten years would have elapsed before the day of such service.

The rule of the common law undoubtedly was, that the service of the declaration and notice on the tenant in possession of the premises sued for, was considered as the commencement of the action. The practice was for the lessor of the fictitious plaintiff, either himself or by his agent, to make delivery of the declaration and appended notice, to the tenant in possession, prior to the term of the court at which he was required to appear; and upon making proof of this service by affidavit, he could obtain judgment *nisi* against the casual ejector, the court permitting the tenant to appear and defend only by entering into the consent rule, confessing the fictions of lease, entry, and ouster, as alleged in the declaration. This declaration and notice subserved the purpose of a writ, and constituted the process by which the defendant was brought into court.

The Code now provides, that "the suing out of a summons is the commencement of a suit, whether it be executed or not,

[Smith v. Fields.]

if the suit be continued by an *alias*, or re-commenced at the next term of the court;" and this is made applicable to all kinds of actions, real as well as personal and mixed.—Code, 1870, §§ 3243, 2924. It is true, as argued, that in actions of eject-ment according to the common-law form, there is strictly speaking no summons, but only the declaration, with a notice annexed to it and signed by the casual ejector, which is served on the defendant, notifying him to appear and defend as the real party in interest. Under our practice, they are filed with the clerk of the court in which it is proposed to bring the action, and he places them in the hands of the sheriff, to be served by him as other process. This is precisely the practice pursued in other forms of actions commenced by summons and complaint, including real actions in the nature of ejectment. There is no reason why we should unsettle the prevailing opinion that the same rule is applicable to each. The declara-tion is nothing more than our complaint, except in form only. Where the declaration and notice, after being filed with the clerk, are placed by him in the hands of the sheriff, or his deputy, to be served, they become process, the execution of which brings the defendant into court, and the action is com-menced from the moment such process is sued out, or issued. The negligence of the sheriff in discharging his duty is not to be visited on the plaintiff, who is himself free from every im-putation of negligence. And in the absence of any evidence to the contrary, by indorsement on the paper or otherwise, the time when process issued will be presumed to be the day of its date.—Angell on Lim., §§ 311, 312.

In this view of the law, the action was commenced on May 10, 1881, the day of the filing of the declaration and the date of the notice, and not, as contended by appellant, on June 9th following, when the process was served by the sheriff.

The other points raised are rendered unimportant by this view of the law. The court did not err in giving the general charge to find for the plaintiffs, and the judgment is affirmed.