# Swann & Billups *v.* Gaston.

### *Ejectment by Trustees for Railroad Lands.*

1.  *Deed of railroad corporation, executed by agent.*—A conveyance of lands which belonged to the Alabama & Chattanooga Railroad Company, executed by J. C. Stanton as general superintendent and attorney in fact, without written authority from the board of directors, or other governing body of that corporation, passed no legal title or estate, as against the corporation, or the trustees who succeeded to its rights; but it would constitute color of title, under which a title might be acquired by possession held long enough to effect a statutory bar.

2.  *Congressional grant of lands in aid of railroads; title of State, and statute of limitations against.*—Under the acts of Congress granting lands to the State of Alabama in aid of certain railroads (11 U. S. Stat. at large, p. 17; 16 *Ib.* 45), as heretofore construed, the legal title to the lands granted at once vested in the State, for the use and benefit of the designated railroad companies; and it continued in the State, except as to the lands sold during the construction of the road in continuous sections of twenty miles, until the construction of the road was completed; and while the title thus continued in the State, the statute of limitations did not begin to run in favor of an adverse possessor under color of title.

3   *Same; lands allotted to Alabama & Chattanooga Railroad Company; statute of limitations against trustees.*—The lands allotted to the two railroad companies which were consolidated into the Alabama & Chattanooga Railroad Company having been conveyed by it to the State, before the completion of the road, by mortgage dated March 2d, 1870, the legal title remained in the State, notwithstanding the completion of the road in May, 1871, until the lands were conveyed by it to Swann and Billups, as trustees for the railroad company, by deed dated February 8th 1877; and the statute of limitations did not begin to run against said trustees until that time.

4.  *Conveyance (or mortgage) of lands; title afterwards acquired.*—A railroad company may convey by mortgage property to be afterwards acquired; and if it conveys lands to which it has only an equitable title, but to which it afterwards acquires the legal title, that title at once enures to the grantee, or mortgagee, both by the express words of the instrument, and by the statutory words of warranty, *grant, bargain, sell and convey.*

5.  *Statute of limitations against State.*—On general principles, a statute of limitations does not apply to the State, unless it is expressly named or included, nor can possession be adverse to it; and by express statutory provision (Code, § 2613,), twenty years is the limitation of an action against the State.

Appeal from the Circuit Court of Etowah.

Tried before the Hon. John B. Tally.

This action was brought by John Swann and John A. Billups, against James L. Gaston, to recover the possession of a tract of land, described as the south-west quarter of the

north-west quarter of section 17, township 11, range 7 east, containing forty acres; and was commenced on the 13th July, 1885. The land sued for was embraced in the grant of lands to the State of Alabama, by act of Congress approved June 3d, 1856, in aid of certain railroads therein mentioned; and it was included in the lands afterwards set apart and allotted by the State to the two railroad companies which were consolidated into the Alabama & Chattanooga Railroad Company. The plaintiffs claimed the land under the deed executed to them, as trustees, by Governor Houston, in the name of the State, dated February 8th, 1877; while the defendant claimed under a conveyance executed to him, in the name of said railroad company, "by J. C. Stanton, general superintendent and attorney in fact," which was dated November 1st, 1870, and recited the payment of $100 as its consideration; and he pleaded adverse possession and the statute of limitations. The several acts of Congress, and the acts of the General Assembly relating to these lands, with the conveyances under which each party claimed, were in evidence; but it is not necessary to set them out, nor to state their contents, as the material facts are stated in the opinion of the court. On all the evidence adduced, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiffs excepted to this charge, and they here assign it as error.

S. F. RICE, for appellants, cited *Ware v. Swann & Billups*, 79 Ala. 330; *Wright v. Roseberry*, 121 U. S. 488; *Jackson v. Vail*, 7 Wend. 125; *Wilson v. Hudson*, 8 Yerg. 398; *Thomas v. Hatch*, 3 Sumner, 170; 4 How. U. S. 169; *Kennedy v. Townsley*, 16 Ala. 246; *Hartley v. Hartley*, 3 Metc. Ky. 56; *Farley v. Smith*, 39 Ala. 38; 58 Iowa, 621; 13 Wall. 92; 75 Mo. 272; 61 Mo. 329; 20 W. Va. 485; 97 U. S. 497.

R. A. D. DUNLAP, *contra*, cited *Swann & Billups v. Lindsey*, 70 Ala. 507; *Ware v. Swann & Billups*, 79 Ala. 330; *Barclay v. Smith*, 66 Ala. 230.

CLOPTON, J.—Appellants' title to the land, to recover which they bring the action of ejectment, had its origin in the act of Congress of June 3, 1856, by which there was granted to the State of Alabama, for the purpose of aiding in the construction of certain railroads, "every alternate

section of land designated by odd numbers, for six sections in width on each side of each of said roads," with a reservation of any sections, or parts of sections, which had been sold by the United States, or to which the right of pre-emption had attached. If the roads were not completed within ten years, the lands unsold reverted to the United States.—11 U. S. Stat. at Large, 17. Under authority conferred by the act, the legislature, by joint resolutions, assigned the lands, granted for the purpose of constructing a railroad from the North-East to the South-Western portion of the State, to the North-East and South-West Alabama, and the Wills Valley Railroads, respectively.—Acts 1857–8, p. 430. These roads were not completed within the time prescribed. By an act of the General Assembly, they were consolidated and incorporated by the name of the "Alabama and Chattanooga Railroad Company;" and all the franchises, rights and immunities granted or pertaining, and property belonging to either of the companies, were vested in the consolidated company. Acts, 1868, 207. By an act of Congress, approved April 10, 1869, the grant made by the act of June 3, 1856, was revived and renewed, subject to all the conditions and restrictions contained in the latter act, except that three years from the passage of the act were allowed, within which to complete the roads.—16 U. S. Stat. at Large, 45. The Alabama & Chattanooga Railroad was completed May 17, 1871, and became entitled to the lands.

The defendant entered into possession of the land sued for, about November 1, 1870, under a deed executed in the name of the Alabama & Chattanooga Railroad Company, by J. C. Stanton, general superintendent and attorney in fact, and has been in possession ever since, claiming in his own right. There being no evidence of any written authority from the governing body of the company, for which Stanton purported to act as agent, to execute the deed, it conveyed no legal title or estate to defendant.—*Standifer v. Swan*, 78 Ala. 88. This was admitted on the trial, and the deed was relied on only as color of title, to show the character and extent of defendant's possession. His contention is, that his continuous adverse possession matured into a title by operation of the statute of limitations of ten years. The suit was commenced July 13, 1885. The material question is,. at what time did the statute begin to run against plaintiffs' cause of action.

Further statement of the provisions of the congressional

acts, and re-discussion of their construction, is unnecessary. The material provisions will be found stated in *Swann v. Lindsey*, 70 Ala. 507, where the acts were fully considered and construed. The construction was, that under the provisions of the act of June 3, 1856, the State had absolute power to sell one hundred and twenty sections included within a continuous length of twenty miles of the road; and when the Governor certified to the Secretary of the Interior that any twenty continuous miles of the road was completed, to sell another one hundred and twenty sections included in a continuous length of twenty miles; and so, from time to time, until the road was completed; that sales made in pursuance of these provisions vested in the purchaser all title of both the Federal and State Governments, whether or not the road was completed; and on the completion of the road within the prescribed time, the indefeasible ownership of the unsold lands vested in the State, or its appointee. This construction was followed and re-affirmed in the subsequent cases of *Standifer v. Swann*, 78 Ala. 88, and *Ware v. Swann*, 79 Ala. 330. The conclusion reached in each of these cases was, that the act of Congress operated a grant *in præsenti* to the State, until the completion of the road. Until then, the State alone could maintain an action for the possession; and until then, the running of the statute of limitations of ten years could not commence.

This construction is not controverted; but it insisted, that the statute began to operate from May 17, 1871, the date of the completion of the road; and as more than ten years elapsed after that time, before the commencement of the suit, that the statute is a full defense. It may be conceded, that if nothing intervened to prevent it, the statute commenced to run on the completion of the road, as the trust would have been executed, and the object of a suit brought thereafter, though in the name of the State, would be to enforce the rights of the company—a litigation in which the State had no real interest. This brings for consideration the legal effect and operation of certain conveyances made by the railroad company to the State, and by the State to the plaintiffs. On March 2, 1870, the Alabama & Chattanooga Railroad Company executed to the State a mortgage of the lands granted by the act of Congress, except such as had been previously sold; and on February 8, 1877, the State, by its Governor, conveyed the land to plaintiffs as trustees. The mortgage and deed were duly recorded. The mortgage

[Swann & Billups v. Gaston.]

was made to secure the bonds of the company given in exchange for the bonds of the State, loaned to the company in pursuance and by authority of an act of the General Assembly, entitled "An act to loan the credit of. the State of Alabama to the Alabama & Chattanooga Railroad Company, for the purpose of expediting the construction of the railroad of said company within the State of Alabama."—Acts, 1869–70, 89. It conveyed "all the lands granted by the United States, to and for the benefit of this company, and all the right, title, interest and estate which said company now has, or may hereafter lawfully acquire, in and to said lands;" reserving the privilege and right to sell any part thereof in accordance with the act of Congress, on condition that the proceeds shall be applied to the payment of the bonds of the company secured by the mortgage. Had defendant shown a sale under this reserved right, by an authorized agent of the company, his title would have been unimpeachable; but, in the absence of such evidence, a purchase from purported agents can avail nothing. The deed by the State to the plaintiffs was made in consideration of the surrender of the bonds loaned to the company, and the release and discharge of the State from liability thereon, under authority of an act of the legislature commonly known as the "Debt Settlement Act."—Acts, 1875–6, 130.

At the time of the execution of the mortgage, the railroad company had only a beneficial interest in the land; the road not having been completed, the legal title was in the State. The mortgage expressly conveys any title and estate which the company might thereafter acquire. There can be no question, that the company could include in the mortgage property to be thereafter acquired. The only title and estate which the company could thereafter acquire, was the legal title and estate—the indefeasible ownership. The company having the equitable interest, and an existing right to. the legal estate on complying with the prescribed condition, and the mortgage including both the equitable and the subsequently acquired legal estate, the completion of the road did not divest the State of the legal title, which it had at the date of the mortgage. Though the company may have become entitled to it, the mortgage operated, by its terms, to continue it in the State.

Another view: The mortgage contains the words, *grant, bargain, sell and convey*. These words, the statute declares, must be construed, unless it otherwise clearly appears from

the conveyance, an express covenant that the grantor was seized of an indefeasible estate in fee simple, and for quiet enjoyment.   The settled doctrine in this State is, that if a person, having at the time no title, conveys land by warranty, and afterwards acquires title, such title will enure and pass *eo instanti* to his grantee; and that the doctrine applies, when the warranty is such as the law implies from the employment of the statutory words.—*Chapman v. Abraham*, 61 Ala. 108.   If, therefore, the legal estate was acquired by the completion of the road, it passed instantaneously in and out of the company; so that there was no instant of time at which the statute of limitations could have been put into operation.   The decisions above referred to, holding the title of plaintiffs derived from the conveyance by the State sufficient to maintain ejectment, can be sustained only on the ground, that the legal title was in the State at the date of the conveyance, which was many years after the completion of the road.

The ten years limitation does not apply to the State, not only on the cardinal and elementary rule, that statutes of limitation do not apply to the State unless it is expressly named, or it was clearly intended to be included, but because of exclusion by express provision, prescribing the limitation of twenty years to "actions at the suit of the State against a citizen thereof, for the recovery of real or personal property."—Code, 1886, § 2613.   It is also well settled, that the possession of the defendant during the time the title remained in the State, though adverse, can not be taken into the computation under the plea of the limitation of ten years. *Kennedy v. Townsley*, 16 Ala. 239; *Iverson v. Dubose*, 27 Ala. 418; *Farley v. Smith*, 39 Ala. 38; *Cary v. Whitney*, 48 Me. 516.

The suit was commenced less than twenty years from the time defendant entered into possession, and less than ten years after plaintiffs became the grantees of the State.   It follows from the foregoing principles, that the statute of limitations is no defense to the action.   The court erred in giving the affirmative charge in favor of the defendant.

Reversed and remanded.