# Alabama State Land Co. *v.* Kyle *et al.*

## *Action of Ejectment.*

1. *Statute of limitations.*—A reservation by the State of an ulterior equitable interest in the proceeds of lands sold by the State does not prevent the statute of limitations from running against the State's grantees from the date of the conveyance, in favor of persons in possession of such lands at the time of the grant.

2. *Evidence; admissibility of copy of certificate.*—The original of a certificate of entry, being shown to be without the jurisdiction of the court, a copy thereof, duly established by evidence as such, is admissible in evidence.

3. *Same; when certificate of entry admissible to show color of title without proof of execution.*—On the trial of an issue as to adverse possession by defendant, a certificate of entry to his grantor, in connection with other evidence that he actually held possession and claimed title under it, is admissible in evidence, without proof of its execution, as color of title to fix the boundaries of defendant's possessions.

4. *Same; admissibility of agreement by tenant to remain in possession.* In ejectment where the issue is adverse possession, the defendant can prove an agreement with the tenant of his predecessor in title, by which the said tenant remained in possession as the defendant's tenant,

5. *Possession by tenant; presumed to be continuous.*—When after a contract of tenancy the landlord sees the tenant in possession, cultivating the land, and after an absence of nine years returns and finds the tenant still in possession, it will be presumed that the possession of the tenant under said landlord was continuous during all of that time.

6. *Certificate of entry; extent of possession thereunder.*—Where one goes into possession of land under a certificate of entry, builds his house on one forty acres. lives in it and clears and cultivates lands lapping over into a part of his entry in another section, and during his occupancy clears portions of each forty acres embraced in the entry and gets wood and timber generally from all parts of the land, his possession extends to the whole tract. and is adverse; and this possession is not interrupted or broken by the sale of forty acres, which does not sever from the rest of the tract the forty acres on which his house is built, but leaves the latter forty still cornering with a forty unsold.

7. *Adverse possession; must be continuous.*—Evidence that one claiming title to land leased it for one or two years to another who cut and hauled a quantity of wood from it, and that thereafter there was no other occupancy for five years, when it was again leased to another tenant, who occupied it for five years, does not show that continuous possession for ten years necessary to give title under the statute of limitations.

[Alabama State Land Co. v. Kyle et al.]

APPEAL from the City Court of Gadsden.

Tried before Hon. JOHN H. DISQUE.

This was a common law action of ejectment, and was commenced May 20, 1890. Three demises are alleged in the declaration. In the first count recovery is sought on the demise of the State of Alabama; in the second, on the demise of Swann & Billups, trustees; and in the third on the demise of the Alabama State Land Company. The parties defendant to said action were R. B. Kyle, John S. Paden, Charles E. Heath, Samuel Clayton, Mrs. Jane Clayton and Sam Henry. There was judgment for the defendants and the Alabama State Land Company now prosecutes this appeal.

The land sued for was the W. $\frac{1}{2}$ of the N. E. $\frac{1}{4}$; and N. W. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$; the N. E. $\frac{1}{4}$ of the N. W $\frac{1}{4}$; and the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of Sec. 31, Township 11, Range 6 East; and was embraced in a grant of lands to the State of Alabama by an act of Congress approved June 3, 1856, to aid in the construction of certain railroads therein mentioned, and it was included in the land afterwards set apart and allowed by the State for the two railroads, which were consolidated into the Alabama & Chattanooga Railroad Company.

On February 8, 1877, the Governor of the State of Alabama executed a deed to Swann and Billups, as trustees, conveying to them, among others, the lands here sued for. On December 8, 1886, Swann & Billups, as trustees, executed a deed to the Alabama State Land Company, conveying among others, the lands sued for in this action. This deed constitutes the basis of the claim of the plaintiff, the Alabama State Land Company, to the land in controversy, and was introduced in evidence on the trial.

James Aiken, who was introduced as a witness on behalf of the defendants, testified that one Joseph Clayton came to his law office and brought with him a certificate of entry to the lands sued for in this action, and that the witness sent the original to Washington to the General Land Office, and that he had never seen the original since. The defendants' counsel then offered to introduce in evidence a paper which the witness Aiken testified was a correct copy of the certificate of entry. Plaintiff objected on the ground that the execution of the original had not been shown, and, second, that it had not been shown that Clayton was in possession claiming and holding under the original copy. The court overruled this objection, allowed the copy to be introduced in evidence as color of title only, and to this ruling of the

court, plaintiff duly excepted. The paper so introduced was a copy of the certificate of entry, dated April 10, 1860, duly signed by the Receiver, showing that the said Joseph Clayton had entered the land sued for in this action.

There was testimony introduced for the defendants tending to show that 'the said Joseph Clayton went into the possession of the land included in the said certificate, and claimed the same as his own, and exercised acts of ownership over it, until he sold or attempted to sell, the same by various deeds executed by him.

The defendants introduced in evidence the following deeds: From Joseph Clayton and wife to W. P. Golightly to the N. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of Section 31, Township 11, Range 6 East, dated in 1877. Deed from Joseph Clayton and wife to Sam Henry, dated April 10, 1877 to the East $\frac{1}{2}$ of N. W. $\frac{1}{4}$ of S. E. $\frac{1}{4}$, and 20 acres more or less of N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ (describing the same by metes and bounds) all in section 31 township 11, Range 6 East. Deed from W. P. Golightly and wife to R. B. Kyle, dated October, 1878, to the N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of Section 31, Township 11, Range 6 East. Deed from R. B. Kyle and wife to J. S. Paden, dated February 9th, 1887, to the N. W. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of Section 31, Township 11, Range 6, East. Deed from Jane Clayton, widow of Joseph Clayton, to Joseph S. Clayton her son, dated April 16, 1888 to N. E. $\frac{1}{4}$ of N. W. $\frac{1}{4}$ of Section 31, Township 11, Range 6 East.

The defendants' evidence further tended to show "that in 1878 and 1879 Sam Henry resided about four miles from the land, and during that time he leased the land to a man who cut and hauled a large quantity of wood from the land; that nothing further was done by him except to pay the taxes on the land and claim it as his own, which he did until the year 1883, when he leased it to another tenant who cultivated it for about five years.

The land described in the deeds from Clayton to Golightly, and Golightly to Kyle, and from Kyle to Paden was cultivated one year by a man named Higgins as a tenant of Golightly, who turned over the possession to Kyle. Kyle testified that he never lived on the lands, but that one Higgins was on the land as the tenant of Golightly; and that immediately after his, Kyle's, purchase, he saw Higgins and told him that he could continue to live on the land, and that Higgins thereupon agreed with Kyle to hold said land as Kyle's tenant, and agreed to keep up fencing, &c. in payment of rents. This agreement was made in Gadsden, Ala. while Higgins was in possession of the land. The

plaintiff moved the court to exclude the conversation testi-
fied to between Kyle and Higgins, on the grounds that it
was irrelevant and inadmissible, and "that the declaration
was not made while the parties were on the land." This
motion was overruled by the court, and plaintiff excepted.
The witness Kyle further testified that he went over the
land shortly after this, and saw Higgins there cultivating a
portion of the land and improving the fences, &c., and was
not on the land any more until about the time he sold to
Paden, when he returned and found Higgins still living on
the land. Paden testified that when he purchased from
Kyle, in 1887, he found Higgins in possession, and that he,
Paden, had continued to keep a tenant, cultivating a portion
of the land ever since. It was further shown by the testi-
mony for the defendant that after their several purchases,
Henry, Kyle and Paden claimed the land described in their
deeds, and paid taxes on it up to the time the present
suit was brought.

In rebuttal to the testimony of the defendants, plaintiffs
introduced the certified transcript from the commissioner
of the General Land Office, showing that the lands sued
for, and which were claimed by the defendants under title
derived from Joseph Clayton, by virtue of his entry of the
same, were at the time of said entry embraced in the grant
of lands to the State of Alabama, by an act of Congress
approved June 3, 1856, and that the right of the Alabama
& Chattanooga Railroad Company had attached to the same,
and that Clayton's entry thereof was illegal and had been
cancelled.

The cause was tried without the intervention of a jury;
and upon hearing all the evidence the court rendered judg-
ment for the defendants.

SMITH & LOWE, for appellant.

AMOS E. GOODHUE, contra.

HEAD, J.—The Alabama State Land Co. claims title to
the land sued for by conveyance from Swann and Billups.
The history of the title of Swann and Billups may be found
in the reported cases of *Swann & Billups v. Gaston*, 87 Ala.
569; *Same v. Lindsey*, 70 Ala. 507; *Ware v. Swann & Bill-
ups*, 79 Ala. 330; *Standifer v. Swann & Billups*, 78 Ala. 88;
and it is unnecessary to repeat it here. The plaintiff's
*prima facie* title is made out, and the defendants set up no
superior title in themselves other than that which they

claim to have acquired by adverse possession of the premises for ten and twenty years. Until the State of Alabama divested itself of title to these lands by the authorized conveyance of the Governor executed to Swann &·Billups, on the 8th day of February, 1877, it is clear the statute of limitations did not begin to run in favor of defendants.—*Swann & Billups v. Gaston*, 87 Ala. 569. But it is contended by the plaintiff that the statute did not then begin to run, because, by the conveyance to Swann & Billups, a trust was created for the use of the State, in this, that Swann & Billups, the trustees, were required by the instrument to pay into the State treasury, after paying the costs and expenses of making the sales, ten *per cent.* of the proceeds of all sales of lands which should be made by them, under and by virtue of the conveyance, in order to reimburse the State certain interest it had theretofore paid by reason of its indorsement of the bonds of the Alabama and Chattanooga Railroad Company, which trust continued, not completely executed, until a period within less than ten years before the institution of the present suit. It appears that such a trust was so created and continued. The conveyance, in all other respects, was for the use of individuals. We have been referred to no authority in support of this contention of the plaintiff, and have been able to find none. This is an action of ejectment by the vendee of Swann & Billups, to enforce the legal title. No recovery can be had on the demise of the State, laid in the declaration, for confessedly the State parted with the legal title by the conveyance to Swann & Billups. From the moment of that conveyance, the grantees therein became seized as individuals, and invested with full and ample power to sue and enforce the title so acquired. This is not an action by the State, asserting a title in itself against the adverse holding of the defendants. It could maintain no action, because it has no title. Swann & Billups having acquired the title, if thereafter they and their vendees acquiesced in the adverse possession of others for the period prescribed by the statute of limitations, they are, by such acquiescence, as effectually barred as if they had conveyed to such adverse holders. The fact that the State, in parting with its title, reserved an ulterior equitable interest in the proceeds of the lands can exert no influence whatever upon the question of legal title, with which we are now concerned. It will be time to consider its immunities from the operation of the statute, when it comes to enforce its equitable rights.—*Bank of the United States v. McKenzie*, 2 Brock,
VOL. XCIX.

[Alabama State Land Co. v. Kyle et al.]

C. C. 393, op. by Marshall C. J.; *Bank of Ky. v. Wister et al.* 2 Peters, 318.

There was no error in admitting secondary evidence of the certificate of entry which purported to have been issued to Joseph Clayton. It was shown, in connection with evidence of Clayton's possession and claim of ownership of the land under it, subsequently introduced, that the paper had been in the possession of Clayton, and that his attorney sent it to the Land Office in Washington. The original being shown to be without the jurisdiction of the court, a copy, duly established by evidence as such, was admissible. It was not necessary to prove the execution of the certificate. It was offered merely as color of title, to fix the boundaries of Clayton's possession, and was admissible for that purpose, without proof of execution, in connection with other evidence that he actually held possession and claimed title under it.

There was clearly no error in permitting proof by Kyle of his agreement with Higgins, by which he constituted Higgins his tenant of that portion of the lands in controversy claimed by him.

As to the forty acres in suit, sold by Clayton to Golightly, and by Golightly to Kyle, and Kyle to Paden, the evidence shows a continuous, actual adverse possession by the several parties for more than ten years after the State parted with its title, and before this suit was brought. Under the facts shown in evidence, it will be presumed that Higgins' possession, as tenant of Kyle, which was shown to have commenced, continued until Kyle returned to the place and found him there, at the time of the sale to Paden. — *Clements v. Hays,* 76 Ala. 280; *Daniels v. Hamilton,* 52 Ala. 105.

The entire lands claimed by Joseph Clayton, under the certificate of entry, lay in a body, as one tract. He, in fact, had and acquired no title to any part of them, but went into possession under claim of title to the whole, under the certificate. He built his house on the forty acres in section 36, and lived in it, and cleared and cultivated land around it, lapping over into a part of his entry in section 31. During his occupancy, he cleared portions of each forty embraced in the whole tract, and got wood and timber generally from all parts of the land. This possession continued until he sold to Golightly and Henry, and thereafter, except as to the lands sold Golightly and Henry, until his death; and a similar possession and claim of title continued in his widow and children from his death to the time of trial. The sale of the forty acres to Golightly did not sever the forty on

which Clayton's house stood from the rest of the tract. The latter still cornered with a forty unsold. We think, under the evidence, it must be held that the possession of Clayton, and his widow and children after him, must be referred to the boundaries of the land contained in the certificate of entry, which possession ripened into title before this suit was brought.

As to the forty acres sold to Sam Henry the case is different. As we have seen the statute began to run with the execution of the deed by the State to Swann and Billups on the 8th day of February, 1877. The only evidence of possession of Henry's land after that date is, that, in 1878 and 1879, Henry leased the land to a man who cut and hauled a large quantity of wood from it; and it is shown that after that time there was no other occupancy until 1883, when Henry leased it to another tenant, who occupied it five years. This clearly falls short of that continuous possession for ten years essential to give title under the statute of limitations; and the judgment of the City Court will be reversed, and a judgment here rendered for the plaintiff for the twenty acres sued for, which was sold to said Henry by Clayton.

We have considered the questions raised by defendant's counsel, viz.: 1. That the certification by the Department of the Interior, of the lands embraced in the grant, is too indefinite to show that these lands were a part thereof; 2. That it is not shown that there was a definite location of the Alabama and Chattanooga Railroad, by which their lands could be identified; and 3. That the assignment of errors in this case is by the Alabama State Land Company, and, therefore, there can be no recovery on the demise of Swann and Billups; and that as defendants were in the adverse possession of the land when Swann and Billups conveyed to the Alabama State Land Company, that conveyance is void for maintenance, hence no recovery can be had on the demise of that company; and think they are without merit. The evidence in the record overcomes the first and second objections. It is true there can be no recovery on the demise of the Alabama State Land Company, because of the doctrine of maintenance, as asserted; but, on due consideration, we construe the appeal and assignment of errors to be by the plaintiff in the cause, in the name of a fiction, justifying a recovery here, as in the court below, on the demise of Swann and Billups. The judgment in this case will take effect as of the date of the submission of this cause.

Reversed and rendered.