[Standifer v. Swann & Billups.]

# Standifer *v.* Swann & Billups.

*Ejectment by Trustees of Railroad Lands.*

1. *Deed of corporation, executed by agent.*—A corporation can not appoint an agent to convey lands, except by the vote of its directors, or other managing board, in whom the power to sell is reposed by charter, or by the general law; and without legal proof of such corporate act, a deed purporting to be executed in its name by an agent is not evidence of title, though it may operate as color of title.

2. *Same; estoppel by ratification of agent's act.*—If the corporation be held to have ratified the acts of one assuming to act as its agent in selling and conveying lands, by its knowledge of the fact that he was so acting, such ratification would only operate as an equitable estoppel, of which courts of law can not take cognizance in an action involving the legal title.

3. *Title of purchasers to lands acquired from railroad company, under provisions of Debt Settlement Act.*—Under the 19th section of the act approved February 23, 1876, commonly called the Debt Settlement Act, such lands as "had been sold by said railroad company [Alabama & Chattanooga] under the authority reserved to it by the act of February 11th, 1870," were excepted from the operation of the deed to Swann & Billups as trustees, and "the titles of all *bona fide* purchasers of any portions of said lands acquired under said authority" were confirmed; but the act does not create any new title, nor confer a legal title on a purchaser from one who, without authority, assumed to act as agent of the railroad company, although he may invoke an equitable estoppel against the corporation from its knowledge and presumed ratification of the acts of such agent.

4. *Sale of lands by railroad company under act approved February 11th, 1870.*—Under the provisions of the act approved February 11th, 1870, "to loan the credit of the State to the Alabama and Chattanooga Railroad Company for the purpose of expediting the construction of the railroad of said company" (Sess. Acts 1869-70, pp. 89-92), the right was reserved to the railroad company to sell any part of the lands in accordance with the terms of the grant by Congress, but with the proviso added, that "the proceeds of said sales shall be appropriated to the payment of the first mortgage bonds of said company" (§ 1); and by force of this proviso, a conveyance by the corporation to its attorney, in payment of fees for professional services rendered, would convey no title, he being chargeable with notice of the trust.

APPEAL from the Circuit Court of DeKalb.

Tried before the Hon. LEROY F. BOX.

This action was brought by John Swann and John A. Billups, as trustees, against Frank H. Standifer and wife, to recover the possession of a tract of land, which was described in the complaint as "the whole of section seventeen (17), township seven (7), range nine (9) east (except the north-west quarter of the north-west quarter of said section), and the south

half of the south-east quarter, and the south half of the south-west quarter of section nine (9), in same township and range;" and was commenced on the 25th April, 1881. The cause was tried on issue joined on the pleas of not guilty, and the statute of limitations of ten years; and the plaintiffs had a verdict and judgment, under the rulings of the court.

The plaintiffs adduced evidence showing that the lands sued for were embraced in the grant of public lands by Congress to the State of Alabama, to aid in the construction of certain rail-roads, under the act approved June 3d, 1856, which was re-newed and extended by subsequent act approved April 10th, 1869; and they offered in evidence these two acts of Congress, the several acts of the General Assembly of Alabama relating to the railroads for whom the grant was made, and the several acts relating to the Alabama and Chattanooga Railroad Company, as the successor of the original railroads; also, the act approved February 23d, 1876, commonly called the Debt Set-tlement Act, and the mortgage, or deed of trust, executed to them by Governor Houston, in the name of the State, under the provisions of that act. It was agreed that these several statutes might be read from the volumes published by author-ity, as if they were set out in the bill of exceptions; but it is not necessary to state their provisions, or even their substance, except as referred to in the opinion. The first section of the act approved February 11th, 1870, entitled "An act to loan the credit of the State of Alabama to the Alabama and Chattanooga Railroad Company for the purpose of expediting the construc-tion of the railroad of said company, within the State of Ala-bama," provided for the issue of State bonds to the railroad company, on receiving bonds of the company secured by first mortgage on its lands, "with this reservation: That the said Alabama and Chattanooga Railroad Company shall have the privilege and right of selling said lands, or any part thereof, in accordance with the act of Congress granting the same; *pro-vided*, however, that the proceeds of said sales shall be appro-priated to the payment of the aforesaid first mortgage bonds of the said railroad company issued to the State."—Sess. Acts 1869-70, p. 90. The 19th section of the Debt Settlement Act, under which the deed to the plaintiffs was executed by the State, specified what property, rights, &c., should pass to them under the deed, using these (with other) words: "All money yet unpaid by purchasers of any parts, parcels or portions of said lands embraced in said mortgage to the State by said rail-road company, and which have been sold by said railroad com-pany, under the authority reserved to it in said act of the 11th February, 1870; but the title of all *bona fide* purchasers of any

portion of said lands, acquired under said authority, is hereby confirmed."—Sess. Acts, 1875-6, p. 145.

The defendants claimed as sub-purchasers from said railroad company, under a conveyance from said company to F. P. Stanton and Lemuel J. Standifer, and a subsequent conveyance from said Standifer to them. The deed from said Standifer to defendants was dated the 28th March, 1872, and no question was raised as to its regularity. The deed from the railroad company to Stanton and Standifer, which was dated July 7th, 1871, and recited the payment of $1,560 as its consideration, purported to be signed by the railroad company, "by J. C. Stanton, general superintendent and attorney in fact." When this deed was offered in evidence, plaintiff objected to its admission, " because there was no evidence showing that said J. C. Stanton had any written authority to execute said deed ; but the court allowed it to go to the jury as evidence, under the plea of the statute of limitations of ten years, as showing claim of title by the defendants." The defendants then introduced said Lemuel J. Standifer as a witness, "who testified, that he had acted for several years as attorney for the Alabama and Chattanooga Railroad Company, in procuring rights of way for the construction of their road, defending damage suits against it, prosecuting trespassers on its property, and procuring the settlement of claims for and against it ; that on the 7th July, 1871, he was in Chattanooga, in the office of said J. C. Stanton, who was the general superintendent of said company, and the general manager of its business, particularly in the construction of its road ; that there were also present at the time six of the stockholders of said company, there being only ten stockholders in all ; that said Stanton then and there stated, in the presence of said stockholders, that he 'had authority to sell the lands of said company, and to execute deeds to the same, and had been selling and conveying the lands of said company for some time ;' and that no objection or dissent was made by said stockholders to this statement of said Stanton, nor did they in any manner question the authority of said Stanton to sell and convey said lands. Witness further stated, that said Stanton had been for some time selling said lands, and executing deeds to the same, all up and down the line of said railroad, from one terminus to the other, and had made a large number of sales and conveyances, signing and executing them as said deed to witness was signed and executed ; that he (witness) had never heard of any objection to the authority of said Stanton to sell said lands and execute deeds to the same, either from said railroad company, or from any one acting for it ; that acting under these facts, and under the powers conferred on said railroad company by said act approved February 11th,

[Standifer v. Swann & Billups.]

1870, he agreed to accept said deed in payment for his said services, which said railroad company was then due him, rendered and performed as attorney as aforesaid, but paid no money for said deed, and promised to pay none ; that the only consideration for said deed was the said services so rendered by him ; that said F. P. Stanton, one of the grantees named in said deed, was a son of said J. C. Stanton, and neither paid nor promised to pay anything for said deed." This was all the evidence offered as to the execution and consideration of said deed to Standifer ; and the defendants also proved possession of the land by them, from the date of their deed to the commencement of this suit.

The defendants requested the following charge to the jury : "If the jury believe, from the evidence, that the deed read in evidence, dated the 7th July, 1871, and purporting to be signed by said railroad company, by J. C. Stanton as general superintendent and attorney in fact, was so executed on that day, in payment for services rendered by said Lewis J. Standifer to said railroad company, as shown in his testimony ; and that said Standifer, on the 28th March, 1872, executed to defendants the said deed also read in evidence ; and that said deed was duly recorded in said county on the 12th March, 1873 ; and that defendants went into possession of said lands under said deed, and have continued in possession of the same, exercising acts of ownership, and claiming the land as their own under said deed, up to and on the 23d February, 1876, the day on which the General Assembly passed the said act read in evidence ; then the State confirmed and ratified the said deed to said Standifer, and their verdict must be for the defendants." The court refused this charge, with others asked by the defendants, and instructed the jury, on the written request of the plaintiffs, that they must find for the plaintiffs, if they believed the evidence. The defendants excepted to the charge given, and also to the refusal of the several charges asked, and they now assign these rulings as error.

DENSON & DISQUE, for appellants.

S. F. RICE, contra. (No briefs on file.)

SOMERVILLE, J.—The evidence shows a clear *prima facie* right of recovery in the plaintiffs, to the lands sued for, unless the defendants have succeeded in showing a better title. *Swann & Billups v. Lindsey*, 70 Ala. 507 ; *Swann & Billups v. Larmore, Ib.* 555.

The defendants seek to do this by the introduction in evidence of a deed, purporting to be the deed of the Alabama and

Chattanooga Railroad Company, which is shown to have been executed by one John C. Stanton, as general superintendent, who also claimed to be attorney in fact of said railroad company. The question is, Did this deed, under the facts of this case, convey to the grantees the legal title to the lands?

It may be conceded, that the Alabama and Chattanooga Railroad Company itself had the lawful right to convey the lands, in accordance with the act of Congress under which they were granted, subject to the trust that the proceeds of sale should be appropriated to the payment of the first mortgage bonds of the company, issued to the State.—Acts 1869-70, pp. 89-90 ; *Swann & Billups v. Larmore, supra.* The whole case, then, is reduced to an inquiry as to the agent's authority to make the sale. Was John C. Stanton the attorney in fact of the railroad company, duly authorized by them to make the deed ? and, if so, has this fact been established by proper legal evidence ?

In this State, all conveyances for the alienation of lands are required to be written or printed on parchment or paper, and must be signed at their foot by the grantor, or contracting party ; and if the conveyance is made by an agent, he is required by statute to have "a written authority."—Code 1876, § 2145. So, every contract for the sale of lands, which is required by our Statute of Frauds to be in writing, if executed by an agent, must be also under written authority.—Code, § 2121. It is manifest that no body corporate can appoint an agent to convey lands, except by the vote of its directors, or other managing board, in whom the power to sell may be reposed by charter, or by general law.—Angell & Ames Corp. (11th ed.) § 232 ; Wood's Field on Corp. § 220 ; *Tenn. &c. R. R. Co. v. E. Ala. Railway Co.*, 73 Ala. 426. The defendants have failed to produce any corporate proceedings, or minutes, showing the appointment of Stanton as agent of the railroad company, with authority to sell and convey lands. This was the best and only legal evidence of such authority, and, in the absence of it, the deed from Stanton would be no evidence of title, but only of color of title ; and it was properly limited by the court, in its legal operation, to the latter purpose.

It is insisted that the Alabama and Chattanooga Railroad Company would have been estopped to deny the authority of Stanton, because they were cognizant of the fact that he was assuming to act as their authorized agent in making sales of their lands ; that he was impliedly authorized to make the deed in question, because thus held out by the company as their agent ; and that this estoppel must operate on the plaintiffs who claim through privity of title with said company. It is also said, that the company ratified the act of Stanton, even if it

[Standifer v. Swann & Billups.]

was unauthorized, and that this is equivalent to a prior authority, and operates as an estoppel. Whatever force there may be in these suggestions, it is clear that they could create no interest in the grantees of the deed, except a mere equitable title of which a court of law will take no notice in an action of ejectment, instituted to try only the legal title. Equitable estoppels of this character, under the rule established in this State, do not operate to divest the legal title of lands. As said in *Kelly v. Hendricks*, 57 Ala. 193, "in a court of law, there can be no estoppel affecting the title to land, which is not in writing; for, at law, the title can pass only by writing."—*Allen v. Kellam*, 69 Ala. 442; *Hendricks v. Kelly*, 64 Ala. 388; *Robertson v. Bradford*, 70 Ala. 385.

The defendants never having acquired a legal title to the lands in controversy, if indeed one of any nature, they can derive no such protection from the act of February 23, 1876, invoked in argument, as to transmute their title into a legal one. Acts 1875–76, pp. 130, 145. Under the influence of section 19 of this act, the deed made by the Governor of Alabama excepts from the operation of the conveyance made by him to the plaintiffs, Swann & Billups, such lands as had been "*sold* by said railroad company under the authority reserved to it in said act of the 11th of February, 1870," to *bona fide* purchasers. The language of the act is, that "the *titles* of all *bona fide* purchasers of any portions of said lands, *acquired* under said authority, is hereby *confirmed.*" It needs no argument to show, that purchasers in good faith were confirmed only in such titles as they had acquired, without the creation of any new right or title.

The foregoing considerations are, in our opinion, fatal to any right of recovery, in this action, on the part of the defendants, and fully justified the giving of the general charge to find for the plaintiffs if the jury believed the evidence.

If, moreover, the proof had showed an authority on the part of John C. Stanton to make sales of these lands granted by Congress under the acts of June 3, 1856, and of April 10, 1869, we would be strongly inclined to hold that no such sale could be made except for cash or its equivalent, and that it could not be made to pay the ordinary debts of the company, as attempted in this case. The railroad company claimed the power to sell solely under the act of February 11th, 1870, passed by the General Assembly of this State. A *proviso* attached to this power declared, that "the *proceeds* of said sales shall be *appropriated* to the payment" of certain mortgage bonds of the company, which were issued to the State.—Acts 1869–70, sec. 1, p. 90. A *trust* was thus created in the purchase-money accruing from such sales, which could not be diverted to any other

[Reynolds v. Collins.]

use or purpose than that specified. The only consideration of the deed made by Stanton is shown to have been professional services rendered by Standifer, one of the grantees, as attorney for the company. He was charged with a knowledge of the law, which authorized such sale only for a consideration which could be utilized for the payment of the mortgage debt due the State ; and this, it would seem, would be sufficient to vitiate the conveyance, because it was made on a consideration clearly not authorized, and in contravention of the statute.

The judgment must be affirmed.

CLOPTON, J., not sitting.