[Swann & Billups v. Miller.]

# Swann & Billups *v.* Miller.

*Bill in Equity by Purchaser of Railroad Lands, to obtain Title from Trustees.*

1. *Grant of lands by Congress, by act approved June 3d, 1856, in aid of railroads in Alabama ; title of trustees appointed under Debt-Settlement Act of Feb. 23d, 1876 ; divestiture at suit of purchaser from railroad corporation.*—Of the lands granted by Congress, bv act approved June 3d, 1856 (U. S. Stat. at large, vol. 11, p. 17 ; 16 *Ib.* 45), in aid of certain railroads in Alabama, two of which were afterwards consolidated and incorporated under the name of the Alabama & Chattanooga Railroad Company. the legal title to all passed to and vested in the trustees named in the conveyance executed in the name of the State, under the provisions of the Debt Settlement Act approved February 23d, 1876 (Sess. Acts 1875-6, p. 145), except those which had been previously sold in accordance with the conditions imposed by the terms of the grant ; and when a prior purchaser, having paid the purchase-money, seeks to divest their legal title, by suit in the nature of a bill for specific performance, he must show that the sale under which he claims was made in the manner, under the conditions, and at the time prescribed by the grant.

2. *Same ; sale by agent of corporation.*—A sale of these lands by a person professing to act as agent of the railroad company, but who is not shown to have any written authority, and whose appointment is not evidenced bv any vote of the board of directors, or minute of other corporate act, is without any validity or legal effect whatever.

3. *Same ; estoppel by ratification of agent's acts.*—A sale by such agent without authority, in violation of the terms of the grant, is absolutely void, and incapable of ratification ; and the receipt of the purchaser's notes and money, by the officials of the corporation, can not operate against it, or against the trustees succeeding to its rights, as an equitable estoppel on the ground of ratification.

4. *Same; sale by State, or by railroad company.*—By the terms of the said grant by Congress, the State had absolute power to sell one hundred and twenty sections of these lands, within a continuous length of twenty miles of the road, before any work whatever was done on it; but the further power to sell additional sections, as the work progressed, was dependent on the completion of other twenty continuous miles, and the Governor's certificate thereof to the Secretary of the Interior at Washington ; and a sale made without a compliance with these conditions, whether by the State or by the railroad company (to whom was transferred the "privilege and right of selling said lands, or any part thereof, in accordance with the act of Congress granting the same"), is illegal and void, conferring no rights on the purchaser which a court of equity will protect.

5. *Same ; title of purchaser under provisions of Debt Settlement Act.*—Under the 19th section of the Debt Settlement Act, approved February 23d, 1876, lands which "had been sold by said railroad company under tho authority reserved to it by the act of February 11th, 1870," were excepted from the conveyance to said trustees, and " the titles of all *bona fide* purchasers acquired under said authority " were confirmed; but a sale made in violation of law can not be held to be *bona fide,* nor the purchaser entitled to the protection of this statute.

[Swann & Billups v. Miller.]

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 15th July, 1884, by D. B. Miller, against John Swann and John A. Billups, trustees in a conveyance executed to them in the name of the State of Alabama, and against several other persons as tenants in possession under them ; and sought to divest the legal title to a tract of land out of said trustees, and to enjoin on action at law which they had instituted against Ellis Phelan, to whom the complainant had sold and conveyed, reserving all minerals and mineral rights to himself. The tract of land contained 200 acres, and was part of the public lands granted to the State of Alabama by the act of Congress approved June 3d, 1856, in aid of certain railroads therein described, two of which were afterwards consolidated and incorporated under the name of the Alabama & Chattanooga Railroad Company; and which were set aside to said last named railroad company, under the terms of said grant. The complainant derived title, through several mesne conveyances, from one Joab Bagley, to whom the lands were sold,—one part on the 13th September, 1870, and the other on the 24th January, 1871,—by one D. J. Duffy, acting as the agent of the said railroad company ; part of the money being paid in cash, according to the terms of the contract, and the purchaser's notes given for the residue. At the time each of these contracts was made, Duffy signed a written instrument, under his hand and seal, which stated that he had made the sale as "commissioner for the Alabama & Chattanooga Railroad Company, for the sale of lands granted to said company by act of Congress," &c. ; and, after stating the terms of sale, declared, "This is, therefore, to entitle the said Joab Bagley to receive a deed from the said railroad company, by its president, secretary, or other duly authorized agent, for the above described tract of land, when the full amount of the purchase-money, with interest, is paid." The money paid by Bagley was paid over to the proper officers of the railroad company, and the purchaser's notes were delivered to them ; and on the subsequent bankruptcy of that corporation, the State of Alabama became the purchaser of all its lands, property and rights, on which the State held a mortgage, given under the provisions of the act of the General Assembly approved February 11th, 1870, to protect its indorsement of the bonds of said company.

The conveyance to said Swann and Billups as trustees, under which they claimed the lands, was dated February 8th, 1877, and executed under the provisions of the Debt

Settlement Act of February 23d, 1876; and it conveyed to them, for the purposes therein mentioned, all the lands and other property which the State had acquired from said railroad company. Bagley died in 1875, and the bill alleged, on information and belief, that he had paid, before his death, all of the agreed purchase-money for the land; and the complainant offered to pay any balance that might be found due.

The several acts of the General Assembly of Alabama incorporating the different railroad companies, and lending the State's credit in aid of the Alabama & Chattanooga road by indorsing the bonds of the company; the act of Congress granting the lands, and the subsequent act renewing and reviving the grant; the joint resolutions of 1857-8, transferring the lands to the railroad company, and other legislative acts relating to the railroads, were in evidence; but, as they are matters of public history, and their material provisions are quoted in the opinion of the court and the briefs of counsel, it is only necessary to refer to them here. They may be found published in the following volumes: U. S. Statutes at Large, vol. 11, p. 17; 16 *Ib.* 45; Sess. Acts of Ala. 1851-2, pp. 178-83; Sess. Acts 1853-4, pp. 270-80; Sess. Acts 1857-8, p. 430; Sess. Acts 1868, pp. 209-11, 345-78; Sess. Acts 1869-70, pp. 89-92; Sess. Acts 1875-6, pp. 330-46.

The chancellor overruled a motion to dismiss the bill for want of equity, and, on final hearing on pleadings and proof, rendered a decree for the complainant; and his decree is now assigned as error by the defendants.

SAM. F. RICE, for the appellants.—(1.) The congressional grant of June 3d, 1856, on which the title to these lands depends, is an affirmative statute, and imperatively prescribes the manner, the only manner, in which they may be disposed of prior to the completion of the road. The said lands, it declares, "shall be disposed of by said State *only* in the manner following—that is to say," one hundred and twenty sections, within a continuous length of twenty miles, "may be sold," in advance of the completion of any part of the road; and additional sections, included within a like continuous length, "may be sold" as the work progressed, on the certificate of the Governor to the Secretary of the Interior at Washington; "and if any of said roads is not completed within ten years, no further sale shall be made, and the lands unsold shall revert to the United States."—U. S. Stat. at large, vol. 11, pp. 17, 18. This is the law of the grant, and it is binding alike on the State, the railroad company, and

purchasers claiming under either of them. The word *sale* had received a judicial construction prior to the passage of this law, and the word must be held to have been used in that sense.—*Williamson v. Berry*, 8 How. 544; *Edwards v. Fire Ins. Co.*, 21 Wend. 492; *Ives v. Davenport*, 3 Hill, N. Y. 376; 1 Benj. on Sales, 1–2, notes by Corbin. The power of sale could not be exercised in any other way, and those who claim under it must show a compliance with its terms. *Williamson v. Berry*, 8 How. 544; Smith's Stat. Const., § 666, and cases cited in note *a.* "The acts of Congress made it a condition precedent to the conveyance by the State of any other lands [than the first one hundred and twenty sections] "that the road should be constructed in sections of not less than twenty consecutive miles;" and "no conveyance in violation of the terms of these acts, the road not having been constructed, could pass any title." *Schulenberg v. Harriman*, 21 Wall. 59; *Farnsworth v. M. & P. Railroad Co.*, 92 U. S. 65.

(2.) The State could convey to the railroad company no greater rights or title than it had to these lands, nor did it attempt to do so by any of the legislative acts cited.—Sess. Acts 1857–8, p. 430; *Ib.* 1869–70, p. 90; *Swann & Billups v. Lindsey*, 70 Ala. 507; *Ib.* 555; *Standifer v. Swann & Billups*, 78 Ala. 88.

(3.) The contract under which the complainant claims, if it had been made by the railroad company, or even by the State itself, would have conferred no rights, being an attempted sale in violation of the act of Congress. But it was not made by the railroad company, nor by its authority; Duffy's appointment as agent, and his authority to sell, not being evidenced by any writing or corporate act.—*Standifer v. Swann & Billups*, 78 Ala. 88; *T. & C. Rivers Railroad Co. v. East Ala. Railway Co.*, 73 Ala. 426; Angell & Ames on Corporations, § 232; Code, § 2121. The writing signed by Duffy, even if he had authority to sell and bind the railroad company, was only binding on him personally.—Story on Agency, §§ 149–50, and notes; *Carter v. Chaudron*, 21 Ala. 88; *Whiteside v. Jennings*, 19 Ala. 784.

(4.) The attempted sale by Duffy has never been ratified, nor could it be ratified, by either the State or the railroad company, since it was in contravention of the act of Congress.—*Pettit v. Pettit*, 32 Ala. 288. There could be no ratification by the railroad company, unless made with knowledge of all the facts which rendered the transaction void. *Johnson v. Johnson*, 5 Ala. 96; *Thompson v. Lee*, 31 Ala. 292. There could be no ratification by the State, except by legislative act.—*VanDyke v. State*, 24 Ala. 81. The 19th section

of the Debt Settlement Act of February 23d, 1876, ratifies and confirms "the titles of all *bona fide* purchasers of any portions of said lands acquired under the authority reserved" to it by the act of 11th February, 1870, and excepts them from the operation of the deed to Swann & Billups. But the complainant did not acquire any right or title by purchase from the railroad company, nor is he a *bona fide* purchaser without notice, being chargeable with knowledge of the public statutes and their attempted violation.—*Witter v. Dudley*, 42 Ala. 616; *Johnson v. Thweatt*, 18 Ala. 741; *Gimon v. Davis*, 36 Ala. 589.

(5.) If the complainant could be considered a *bona fide* purchaser without notice, the delay in filing his bill would be fatal to relief.—*Holgate v. Eaton*, 116 U. S. 33; *Jackson v. Edwards*, 22 Wend. 508; 1 Bailey's Eq. 371; 1 Dess. 307.

WATTS & SON, *contra*.—(1.) The act of Congress of June 3d, 1856, was a grant of lands *in præsenti* to the State of Alabama, with conditions subsequent annexed, for the breach of which a forfeiture and reversion might have been claimed by the United States.—4 Kent's Com. 138, top; Wasb. Real Property, vol. 2, top p. 3; *Schulenberg v. Harriman*, 21 Wall. 64; 92 U. S. 733, 760; 21 Wall. 310. The purpose of the grant is specified, and the conditions subsequent are annexed—1st, requiring the application of the lands, or the proceeds of their sale, to the construction of the railroads designated; 2d, requiring the lands to be disposed of as the work on the road progressed, which was a restriction on the power of alienation; 3d, vesting the power of disposal (or alienation) in the legislature, and thereby excluding the executive; and, 4th, declaring that the lands granted "shall be disposed of by said State only in the manner following." The purpose of the grant has been accomplished, the road having been completed, and the United States have never attempted to enforce a forfeiture on account of the breach of any of these conditions subsequent. Does it lie in the mouth of these railroad trustees, claiming under a deed from the State executed after the lands in controversy had been sold by the railroad company (or its agents and officials), to enforce this forfeiture and consequent reversion?

(2.) "It has often been decided, that lands granted by Congress to aid in the construction of railroads, do not revert after condition broken, until a forfeiture has been asserted by the United States, either through judicial proceedings instituted under authority of law for that purpose, or through some legislative action legally equivalent to a

[Swann & Billups v. Miller.]

judgment of office found at common law."—*Railway Co. v. McGee*, 115 U. S. 469, citing *United States v. Repentingny*, 5 Wall. 211, 267, 268 ; *Schulenberg v. Harriman*, 21 Wall. 49, 66 ; *McMicken v. United States*, 97 U. S. 217 ; *Van Wyck v. Knevals*, 106 U. S. 360.   See, also, *Knevals v. Hyde*, 5 Dillon, 469 ; *Tucker v. Ferguson*, 22 Wall. 527 ; *Doe v. Larmore*, 116 U. S. 198 ; 18 How. 432.   That the forfeiture may be waived by the United States, see *Railroad Co. v. Lewis*, 53 Iowa, 101 ; *Chicago v. Grinnell*, 51 Iowa, 476 ; *Grinnell v. Chicago*, 103 U. S. 744.

(3.) That the act of Congress "is a law as well as a grant," can not affect the application of this principle.   The charter of a private corporation, or a statute granting an existing corporation additional powers, "is a law as well as a grant ;" yet, where limitations have been exceeded, or conditions broken, if the State does not claim a forfeiture, no one else can complain.—*Lehman, Durr & Co. v. Warren*, 61 Ala. 455.

(4.) The grant was to the State as trustee, while the railroad company was the beneficiary.   The road has been built, principally with the proceeds of sales of the lands ; and this was a substantial compliance with the terms and conditions of the grant, which is all that law, equity or justice can demand.—*Cross v. Carson*, 8 Blachf. 138 ; 44 Amer. Dec. 746, notes ; *Chapin v. School District*, 35 N. H. 445; *Spaulding v. Hallenberg*, 39 Barb. 79 ; *Inhab. v. Hadley Man. Co.*, 4 Gray, 140.   If there had been any misapplication, or diversion of the lands' or their proceeds, from the purposes of the grant, a different question might be presented.

(5.)   The State has never repudiated these sales, if it had the power to do so, nor expressed its dissent in any way ; but, on the contrary, has acquiesced in and ratified them, both by legislative acts, and by acts *en pais* which a court of equity will regard as a ratification.   Bagley's notes for the purchase-money, which went into the treasury of the railroad company, were bought by the State at the sale by the assignee in bankruptcy, and were transferred, with the other assets of the company, to Swann & Billups as trustees ; and were filed by said trustees as claims against the estate of Bagley.   This amounts to a ratification of the sale, whether it be held void or voidable, and estops the State, or any one succeeding to its rights, from repudiating it.—*Sloan v. Frothingham*, 72 Ala. 605 ; *Goodman v. Winter*, 64 Ala. 434 ; *Pickens v. Yarborough*, 30 Ala. 408 ; *Merritt v. Horne*, 5 Ohio St. 309.   That a void sale, or other void act, may be ratified, see *Stewart v. Hooper*, 25 Ala. 408 ; Freeman on Void Sales,

§ 50 ; 80 Ill. 208 ; 53 Penn. St. 352 ; 51 Miss. 21 ; 42 Penn. State, 143.

(6.) But the State, recognizing the equitable rights of purchasers who had bought in good faith, and having knowledge of all the facts connected with these irregular sales, has, by repeated legislative acts and declarations, made express provision for them, and excepted them from the operation of the deed to Swann & Billups.—Sess. Acts 1872–3, p. 55; Ib. 1875-6, pp. 130, 154 ; Ib. 1880–1, p. 99 ; Ib. 1882-3, p. 62. It is not to be presumed that the General Assembly, by these several statutes, attempted to provide for purchasers who had bought in strict compliance with the act of Congress, and who needed no protection. The words *"bona fide* purchasers," as used in them, must have been intended to have some effect, and can only apply to those who bought in good faith and paid the purchase (or gave notes afterwards paid), but had bought at a different time from that prescribed by the fourth section of the act of Congress.

SOMERVILLE, J.—The lands in controversy are a portion of those granted to the State of Alabama by the act of Congress approved June 3, 1856 (11 U. S. Statutes at Large, pp. 17 and 18), to aid in the construction of certain railroads in the State. This grant was renewed by another act of Congress, approved April 10, 1869, found in 16 U. S. Statutes at Large, pp. 45 and 46.

We have often decided, that the legal title of so much of these lands as had not been previously sold in accordance with the foregoing acts of Congress, and in the manner prescribed by them, became vested in the appellants, Swann & Billups, as trustees, by the deed of the State of Alabama made to them, under authority of law, on February 8th, 1877.—*Standifer v. Swann & Billups*, 78 Ala. 88 ; *Swann & Billups v. Lindsey*, 70 Ala. 507. This fact is admitted by the complainant's bill in this case, the purpose of which is to compel a conveyance to him, by these parties, of the legal title to a tract of two hundred acres of these lands, upon the alleged ground that he is the *bona fide* purchaser and lawful owner of the equitable title, and is entitled to a conveyance of the legal title, upon settled principles of specific performance.

The title of the complainant, Miller, can be no better than that of Bagley, from whom he claims by various intermediate conveyances, and who derived whatever interest he had through two executory contracts of conveyance, made by one Duffy, professing to act as the authorized agent of the

Alabama & Chattanooga Railroad Company; the one of these contracts being made on September 13th, 1870, and having reference to one hundred and sixty acres of this land, exempting certain mineral rights reserved; and the other bearing date January 24, 1871, bargaining for the release of these reserved rights, and a sale of other forty acres of the land. The inquiry then is, did Bagley have an equitable title to these lands, by virtue of these contracts of sale, thus made with Duffy at the dates specified?

The testimony fails to show that Duffy had any written authority from the railroad company, to act as its agent in making these sales; nor is it shown that there ever was any vote of the board of directors, or any minute made of the corporate proceedings of this road, evidencing the appointment of Duffy as such agent. The contracts of conveyance were, therefore, invalid, and of no legal effect in themselves. This was decided by us in the case of *Standifer v. Swann & Billups*, 78 Ala. 88; and re-affirmed in *Ware v. Swann & Billups*, at the last term, 79 Ala. 330.

This difficulty is sought to be obviated by the contention, that Duffy held himself out publicly as the agent of the railroad, and made these sales, receiving from Bagley, the vendee, a part of the purchase-money, and taking his notes for the balance; that the money went into the treasury of this corporation, and the officials of the company received the notes, and asserted ownership of them, with a full knowledge of the facts attending the transaction. It is argued that this was a ratification of Duffy's agency, and an adoption of his acts of sale, which would be binding as an equitable estoppel on the railroad company in its corporate capacity.

It is answered by the defendants, among other things, that, under the facts stated in the bill, these alleged contracts of sale—made, as we have said, respectively, on September 13th, 1870, and January 24th, 1871—were *in violation of the act of Congress* making the grant of these lands to the State, and were for this reason null and void, conveying, as is insisted, no title whatever to Bagley.

The position seems to us undeniable, that the burden is cast on the appellee, of averring and proving every material fact necessary to establish the validity of the alleged sales made to Bagley. In asking the court for affirmative relief, which could not be granted unless complainant's title was good, and he having only Bagley's title, it is but reasonable to require of him satisfactory evidence of the fact that these sales were made in the manner, under the conditions, and at the times prescribed by the law regulating these matters.

Compliance with the terms of the act authorizing the sales, is a necessary condition precedent to their validity.

It is a material fact, that these contracts of sale between Duffy and Bagley were made before the completion of the Alabama & Chattanooga Railroad—an event which is shown not to have transpired until May 17th, 1871. This being so, they could be valid only under one of two conditions or states of fact : 1st, the lands sold must have been embraced in the first one hundred and twenty sections, which the State, by the terms of the grant from Congress, had the power to sell, in order to commence the construction of the first twenty miles of the road ; or, 2d, the mode and time of sale prescribed by section 4 of the original grant of June 3d, 1856, must have been complied with in every essential, its terms having been unchanged by the later act of April 10th, 1869, renewing the grant, save in certain particulars not affecting the questions before us for decision. These two propositions are manifest from the most casual inspection of these statutes.—11 U. S. Stat. at Large, pp. 17-18 ; 16 U. S. Stat. at Large, pp. 45-46 ; *Schulenburg v. Harriman*, 21 Wall. 44, 57 ; *Swann & Billups v. Lindsey*, 70 Ala. 507 ; *Swann & Billups v. Larmore*, 70 Ala. 555.

It is shown by the record, that the lands in controversy were not embraced in the first one hundred and twenty sections, which were authorized to be sold in order to construct the first twenty miles of the Alabama & Chattanooga road, which succeeded to the rights accorded to two of the roads mentioned in the original grant. The only remaining inquiry then is, whether the power of sale, conceding it to have been executed under the authority of this corporation, was in accordance with the provisions of section 4, of the act of June 3d, 1856, as renewed by the act of April 10th, 1869; for, as said by the United States Supreme Court in *Schulenberg v. Harriman*, 21 Wall. 44, 59, where an act substantially similar was construed, "No conveyance in violation of the terms of those acts, the road not having been constructed, could pass any title."

Section 4 of this act reads as follows : " That the lands hereby granted to said State shall be disposed of by said State *only in the manner following*, that is to say : that a quantity of land, not exceeding one hundred and twenty sections for each of said roads, and included in a continuous length of twenty miles of each of said roads, may be sold ; and *when the Governor of said State shall certify to the Secretary of the Interior* that any twenty continuous miles of any of said roads is completed, *then* another quantity of land, hereby granted, not to exceed one hundred and twenty

sections for each of said roads having twenty continuous miles completed as aforesaid, and included within a length of twenty miles of each of said roads, *may be sold; and so, from time to time, until said roads are completed;* and if any of said roads is not completed within ten years, no further sale shall be made, and the lands unsold shall *revert* to the United States." This section is unchanged by the reviving act of April 10th, 1869, except that three additional years are allowed for the completion of the road. The second section of the same act of 1856 made the lands subject to the disposal of the legislature: but the first section limited this right, by declaring that they could be disposed of only *as the work progressed.*—11 U. S. Stat. at Large, pp. 17-18.

It was, of course, beyond the power of the legislature to infringe the provisions of this law. Nor has that body attempted to do this. The act of February 11th, 1870, enacted by our General Assembly, under the authority of which the Alabama & Chattanooga Railroad Company executed a mortgage to the State of Alabama, bearing date March 2d, 1870, provided that the company, while yet a mortgagor, should have "the privilege and right of selling said lands, or any part thereof, *in accordance with the act of Congress* granting the same;" the proceeds of sale to be appropriated to the payment of the mortgage debt due by the company.—Acts 1869-70, pp. 89-92.

There is neither allegation nor proof that the requirements of section 4 of the act of 1856 had been complied with, in such manner as to authorize these alleged contracts of sale, or, in fact, in any manner at all, at the times the sales are claimed to have been made, which, as before stated, was before the completion of the road. After the sale of the first one hundred and twenty sections, the effect of this section, taken in connection with section 1 of the same act, was, as said by the United States Supreme Court, in *Schulenberg v. Harriman,* 21 Wall. 59, to make it a "condition precedent to the conveyance by the State of any other lands, that the road should be constructed in sections of not less than twenty consecutive miles." And the evidence of this fact, as prescribed by the act, is the official certificate of the Governor of the State, to the Secretary of the Interior, at Washington. The State itself being thus prohibited, by the terms of the act, from making the sales at the time they were made, the railroad company, and all persons acting under its authority, were equally prohibited from doing the same thing. It can scarcely be contended, that a sale made in contravention of the letter and policy

[Swann & Billups v. Miller.]

of the law is merely voidable. It can not be other than void *ab initio.*

It is no answer to this conclusion, that the effect of such an illegal sale would be only to forfeit the grant, and that as a ground of forfeiture it was a condition subsequent, of which no one else than the United States could claim the benefit. The rule undoubtedly is, that no one can take advantage of the non-performance of a condition subsequent annexed to an estate in fee, but the grantor, his heirs, or successors ; and the government is bound by this principle. But the act of Congress conferring title to these lands was not a mere grant. It was a *law,* as well as a grant. Nor is it contended that anything done by the State, or by the railroad company, has operated, *ipso facto,* to forfeit the title of the lands, or divest it out of either of these grantors, so as to vest it again in the United States. The contention of appellants' counsel is, that no title passed to Bagley, under or by virtue of these attempted sales, because they were in violation of the letter and policy of *the law* which authorized the grant. No question of forfeiture is thus raised by the record.

It is said further, that the title of Bagley has been confirmed by subsequent legislation of the General Assembly bearing on this subject. These laws go no further than to protect the titles, legal and equitable, of all *bona fide* purchasers of these lands, lawfully acquired under conveyances, or contracts of conveyance, made in accordance with the terms of the foregoing acts of Congress.—Acts 1875-76, p. 145, § 19 ; Acts 1880-81, p. 101, § 1 ; *Standifer v. Swann & Billups,* 78 Ala. 88. No sale made in violation of law can be said to be *bona fide,* nor are the claims of a *mala fide* purchaser intended to be protected by these statutes.

The contracts of sale, being void for illegality, were incapable of ratification. Only that which is voidable can be ratified, in any proper sense of the word, not that which is absolutely void.

These conclusions are sufficient, without the consideration of other questions, to authorize the reversal of the decree in this cause. The bill was without equity, and the chancellor erred in not so holding.

Reversed and remanded.