# Miller *v.* Swann & Billups.

*Bill in Equity by Purchaser of Railroad Lands, against Trustees, to obtain Conveyance of Legal Title.*

1. *Forfeiture of grant, for breach of condition subsequent.*—No one but the grantor, his heirs, or successors, can take advantage of a forfeiture by breach of condition subsequent; but this principle can not be invoked by the defendant in an action at law, seeking in equity to enjoin its further prosecution, when both parties claim under the grantee, and the declaration of such a forfeiture would only show that the plaintiff at law had no legal title.

2. *Grant of lands by Congress, in aid of railroads in Alabama; title of State, and of trustees under Debt-Settlement Act of Feb. 23d, 1876; sale by railroad agent without authority; acceptance of purchase-money as ratification.*—Under the acts of Congress granting public lands in Alabama in aid of railroads (U. S. Stat. at large, vol. 11, p. 17; 16 *Ib.* 45), the legal title to the lands was vested in the State as trustee, for the purposes mentioned, and might be conveyed by it to several railroad companies, subject to the restrictions imposed by the act of Congress; but, having conveyed the lands subject to these restrictions, which gave a conditional right of sale, the State could not ratify and sanction a sale made in violation of those conditions, nor has it done so in regard to the lands acquired by the Alabama & Chattanooga Railroad Company, some of which were ,afterwards sold by the agents of that company without authority; and sub-purchasers of those lands, being sued 'by the railroad trustees, can not enjoin the action in equity on the ground that the purchase-money paid was used in completing the road.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The original bill in this case was filed on the 15th July, 1884, by D. B. Miller, against John Swann and John A.

Billups, trustees in a conveyance executed to them in the name of the State of Alabama, and against several other persons, tenants in possession under them; and sought to divest the legal title to a tract of land out of said trustees, and to enjoin an action at law which they had instituted against Ellis Phelan, to whom the complainant had sold and conveyed with reservations. The tract of land was a part of the public lands granted to the State of Alabama by the act of Congress approved June 3d, 1856, in aid of certain railroads therein described; and of that portion of said lands which were afterwards allotted and set apart, under the terms of said grant, to the Alabama & Chattanooga Railroad Company. Swann and Billups, plaintiffs in the action at law, claimed the land under the deed executed to them by Governor Houston, in the name of the State of Alabama, on the 8th February, 1887, under the provisions of the "Debt Settlement Act" of February 23, 1876, as trustees for the creditors of said corporation. The lands had been sold, in 1870 and 1871, by one D. J. Duffy, acting as the agent of the railroad company, to Joab Bagley; and the complainant derived title, through mesne conveyances, from said Bagley. Part of the purchase-money was paid in cash by Bagley, and his notes given for the residue, according to the terms of the contract. At the time each of these contracts was made, Duffy signed a written instrument under seal, which stated that he had made the sale as "commissioner for the Alabama & Chattanooga Railroad Company, for the sale of lands granted to said company by act of Congress," and further declared, "This is, therefore, to entitle the said Joab Bagley to receive a deed from the said railroad company, by its president, secretary, or other duly authorized agent, for the above described tract of land, when the full amount of the purchase-money, with interest, is paid." Bagley died in 1875, having paid the balance of purchase-money due, as the bill alleged on information and belief; and the complainant offered in his bill to pay any balance that might remain unpaid.

The chancellor overruled a demurrer to the bill, and, on the first hearing, on pleadings and proof, rendered a decree for the complainant; but his decree was reversed by this court on appeal, and the cause was remanded, as shown by the former report of the case, where the facts are stated at length.—82 Ala. 530-40.

After the reversal and remandment, the bill was amended,

[Miller v. Swann & Billups.]

by leave of the court, by adding these averments:   (1.)
That at the time the contracts of sale were made by Duffy
to Bagley, the said railroad corporation had completed its
road from its eastern terminus in Tennessee, in the direction
of Tuskaloosa, Alabama, to a point beyond said lands in
Jefferson county, and was running its trains, carrying freight
and passengers over that portion of its road; that the entire
road was finished on the 17th May, 1871; that said contracts
of sale by Duffy to Bagley "were made in accordance with
said act of Congress, and the requirements of said act had
been complied with in all essential parts, in such manner as
to authorize said contracts"; or, "if there was not a strict
compliance with the letter of said statute," said contracts
were made "according to the true intent and spirit of said
statute, and have been fully ratified and confirmed by the
railroad company since the 17th May, 1871, and by the State
of Alabama, and by said Swann and Billups, and no action
has been taken by the United States Government, through
any of its departments, to declare a forfeiture on account of
any irregularity in said sales to Bagley, or for any other
cause."   (2.) That payments were made by Bagley on his
notes, but how much complainant does not know; that
Duffy claimed, in a letter written in February, 1873, that a
balance of $105 was then due; and that Bagley's notes were
filed after his death, by said Swann and Billups, as claims
against his estate.

On the second hearing, on pleadings and proof, the chan-
cellor dismissed the bill, holding that the amendments, and
the additional testimony in support thereof, did not take the
case out of the influence of the former decision of this court;
and this decree is here assigned as error.

WATTS & SON, JOHN PHELAN, and ARRINGTON & GRAHAM,
for appellant.

SAMUEL F. RICE, contra.   (No briefs on file.)

SOMERVILLE, J.—This case has once before been de-
cided by this court, at a former term.   The facts of the case
remain essentially unchanged.   The chancellor now decides,
that there is nothing in the amended bill, or in the additional
testimony, which takes the case out of the operation of the
former decision, as it appears reported under the title of
Swann & Billups v. Miller, 82 Ala. Rep. 530.

.The decree might well be affirmed upon the authority of that case. The printed argument filed in the case, by the able counsel of the appellant, and his oral argument at the bar, are but reproductions of the one filed on his application for a re-hearing on the former appeal. This argument was then considered by us, and we saw nothing in it which, in our judgment, required us to modify or recant the opinion then announced.

In view of the importance of the question raised, and the magnitude of the interests involved, however, we have held the cause up for further examination, in the light of one or more recent decisions of the Supreme Court of the United States, which are asserted to bear on the subject in dispute.

The contest of title is between Swann and Billups, on the one hand, who derive their interest in the land from the State, and Miller, on the other, who claims through one Bagley, under the Alabama and Chattanooga Railroad Company. The common source of title is· admitted to be the State, the lands in controversy being a portion of those granted to the State of Alabama by the act of Congress approved June 3d, 1856 (11 U. S. Stat. at large, pp. 17-18), to aid in the construction of certain railroads in this State. This grant was renewed and extended by another act of Congress, approved April 10, 1869 (16 U. S. Stat. at large, pp. 45-46.)

Much time and space may be saved by disposing of some points urged in the argument of appellant's counsel, as to which there can be no room for reasonable controversy.

So far as the question of forfeiture is concerned, it may be admitted that, if the railroad company had the authority to sell the lands, and did so prior to the legally authorized time, the condition violated would be a condition subsequent, and no one could take advantage of the violation of a condition subsequent, except the United States Government. The rule is unquestionable, that no one but the grantor, or his heirs, or successors, can set up a failure to perform a condition subsequent.

The question of forfeiture does not, however, enter the case, as we view it. If there had been a forfeiture for violation of a condition subsequent, and the Government had claimed the benefit of it, the title of Swann & Billups, as trustees, as well as that of the State under which they claim, would also be divested. The plaintiffs in ejectment would have no title, and this fact would, of itself, defeat their action, unless the defendants were estopped to deny the

fact by reason of claiming through the Alabama & Chattanooga Railroad Company, which corporation held under the State by grant, and solemnly admitted its title by so holding, and executing a mortgage back to the State on these lands to secure certain bonds loaned by the State to expedite the construction of the road.—Acts 1869-1870, pp. 89-92. The basis of the defense to the bill, which seeks to enjoin the ejectment suit, is, that the title of the plaintiffs in ejectment is good, and, therefore, there necessarily could have been no forfeiture. The only issue is, whether such title has been divested by a *lawful and authorized* sale by the railroad company, *under the power conferred by the State,* and under the acts of Congress in question.

It has often been held, in the numerous cases of this class, which have come before this court for consideration, as follows: (1.) That the title to these lands was vested by Congress in the State as trustee for the purposes mentioned. (2.) That the State had the right to transfer the lands to the railroad company, subject to the restrictions imposed by the acts of Congress, which made the grant; and that the transfer was subject to these restrictions on the grantee's power of disposition. (3.) That the legal title to the lands was to remain in the State until the road was completed, which event occurred on May 17th, 1871, the State never having conveyed the legal title, up to this time, unless to Swann & Billups, as trustees for the creditors. (4.) That the State had no authority to sanction any sale of these lands, except such as might be made in substantial compliance with the terms imposed by Congress, and that it has made no attempt to do so.

These propositions are fully supported by the decisions of this court, and by those of the United States Supreme Court.—*Swann v. Lindsey,* 70 Ala. 507; *Swann v. Larmore, Ib.* 555; s. c., 116 U. S. 198; *Standifer v. Swann,* 78 Ala. 88; *Ware v. Swann,* 79 Ala. 331; *Swann v. Miller,* 82 Ala. 530; *Swann v. Gaston,* 87 Ala. 569.

The interest in the lands claimed by the railroad company was derived from the State, through the joint resolution of the General Assembly, approved January 30th, 1858, granting them to certain railroads, under which corporations the Alabama & Chattanooga road claims by privity of title. Acts 1857-58, p. 430; *Swann v. Lindsey,* 70 Ala. 507.

The railroad company, on March 2d, 1870, mortgaged these lands back to the State, under the authority conferred

[Miller v. Swann & Billups.]

by the act of the General Assembly, approved February 11th, 1870.—Acts 1869-70, pp. 89-92. The sales to Bagley were made after the execution of this mortgage, and Miller claims no better title than Bagley acquired.

Unless the lien of the mortgage was released, it is manifest that the title acquired under it would be superior to that acquired from the mortgagor—or, in other words, that Swann & Billups' title would be superior to Miller's.—*Wilson v. Boyce*, 92 U. S. 320.

A mortgagor ordinarily has no power to sell the mortgaged property, free of the incumbrance created by the mortgage. He may do so, however, if allowed by the contract of the parties, the rights of no creditors intervening. Or he may be permitted to do so by express legislative authority. Such authority is claimed in this case.

The act of February 11th, 1870, expressly permits a "reservation" to be made by the railroad company, in the mortgage to be executed to the State, providing that "the said Alabama & Chattanooga Railroad Company shall have the privilege and right of selling said lands, or any part thereof, in *accordance with the act of Congress* granting the same."—Acts 1869-70, pp. 89-90, sec. 1. This reservation was incorporated in the mortgage, and its construction, as applied to the facts of the case, is the controlling question for us to decide. The power retained by the mortgagor was not unlimited power to sell. It was a power to sell only in accordance with the terms and conditions of the act of Congress making the grant—which, we have said in a former decision, was "*a law* as well as a grant." If these terms and conditions were followed, then the lien of the mortgage was by agreement to be released. If they were *not* followed, as to the mode or time prescribed, or otherwise, then the contract of the parties is, that the lien of the mortgage was to remain unaffected. Compliance with the essential requirements of the act of Congress became thus a condition precedent to the divestiture of title out of the State as mortgagee. This, we repeat, was the express *contract between the parties.* It is sufficiently shown in the former opinion in this case, that the attempt to sell to Bagley was in direct violation of the terms of the law of Congress, and, therefore, necessarily also in violation of the agreement of the parties to the mortgage, which was based on that law.—*Swann v. Miller*, 82 Ala. 530. The lien of the mortgage, for this reason, remained undischarged. This we understand to be

[Miller v. Swann & Billups.]

the natural and just construction of the mortgage agreement, and of the act of the Alabama General Assembly, approved February, 1870, above cited. The case of *St. Louis Iron Mountain & Railway Co. v. McGee*, 115 U. S. 469, is not, in our opinion, in conflict with the conclusion reached in this case. The question there discussed involved the construction of no mortgage, or other contract between the State and the railroad to which the grant was made, analogous to the one here construed, which governs the relative rights of the contracting parties.

The act of Congress conferring title to these lands, moreover, was not a mere grant. As said on the former appeal in this case, "It was a *law* as well as a grant."—*Swann v. Miller*, 82 Ala. 540. Its policy was to prohibit either the State, or its grantees, from selling any of these lands, except in the mode, and at the time authorized. Its prohibition was against such sales. An express act of the General Assembly, attempting to legalize these sales, would have been void for repugnancy to the letter and policy of the law. An agreement between the State and the railroad company, having in view such a violation of the Congressional statute, would have been equally void. Can the actual doing of the illegal thing be less invalid than the agreement to do it, or than a law which is void because it purports to authorize it to be done? In *Pettit v. Pettit*, 32 Ala. 288, this court properly held, that a lease of lands belonging to an Indian reservation, under a treaty with the Chickasaw nation, was illegal and void, because in violation of the provisions and policy of the treaty of 1832. And it was further held that it "was incapable of confirmation, because it falls within the influence of the general rule, that a contract which is void, either by a positive law, or upon principles of public policy, is deemed incapable of confirmation." We have once before so declared the law of this case, and we adhere to the conclusion reached.—*Swann v. Miller*, 82 Ala. 530, 540; Bishop on Contr., §§ 542, 614, 620, 846; 2 Pom. Eq. Jur., § 964.

There is another view of this question of ratification. No one could ratify the sale in question except the State, so as to discharge the lien of its mortgage. This could be done only by legislative authority.—*Van Dyke v. State*, 24 Ala. 81. The laws enacted on this subject protect only the titles of *bona fide* purchasers, and Bagley was not of this class. *Swann v. Miller*, 82 Ala. 530, 540. The receipt of the

purchase-money for the lands, by the officers of the railroad company, was no estoppel to preclude the rights of the State.

One suggestion more. It is argued, that, inasmuch as the railroad was fully completed, the purposes of the act of Congress have been carried out, and this confers a strong equity on the purchaser of the land, which was a part of the fund intended for this trust. It may be answered, that the equity of the State is the stronger, in view of the fact that the road was constructed with her bonds advanced to the company, for the security of which the very mortgage in controversy was given.

The decree of the chancellor is accordingly affirmed.